733 A.2d 1014

**William J. FARLEY, Jr. et al.**

**v.**

**ALLSTATE INSURANCE COMPANY.**

**No. 119, Sept. Term, 1998.**

Court of Appeals of Maryland.

July 27, 1999.

**36**

38

Bruce D. Hechmer (William J. Blondell, Jr., William J. Blondell, Jr., Chartered, on brief), Baltimore, for Appellant.

Kenneth G. Macleay (Rollins, Smalkin, Richards & Mackie, L.L.C., on brief), Baltimore, for Appellee.

Argued before BELL, C.J., and ELDRIDGE RODOWSKY, CHASANOW, RAKER, WILNER, and CATHELL, JJ.

CHASANOW, Judge.

The primary issue raised in this appeal is whether, in a breach of contract action against an automobile insurer for nonpayment of underinsured motorist benefits, the contract itself is admissible into evidence, including its coverage amounts. Appellants (William J. Farley, Jr., and Ana Farley) argue that the trial court erred by prohibiting introduction of their insurance contract into evidence, resulting in an inadequate damage award. Appellee (Allstate Insurance Company) maintains that unless the amount of underinsured motorist coverage itself is in controversy, it is more prejudicial than probative to disclose this information to the jury.

Appellants also ask us to resolve whether the trial judge was in error (1) in failing to give Appellants' requested jury instructions numbers six, seven, and ten; and (2) by permitting the Appellee in closing argument to question the reasonableness and necessity of the Appellant's medical bills, treatment, and lost wages. Appellants argue that the trial court's

failure to give the requested jury instructions, along with permitting certain portions of Appellee's closing argument, was prejudicial to Appellants, resulting in an insufficient verdict.

For the reasons stated in this opinion, we hold that the trial court did nor err in refusing to admit the automobile insurance contract into evidence, as its admission would be more prejudicial than probative. Unless the amount itself is in controversy, the admission of the contract into evidence, in order to get before the jury the available amount of underinsured motorist coverage, would likely result in a distorted jury verdict.

As to the remaining issues, we hold that the trial court did not err by failing to give the jury the Appellants' requested instructions, nor was it error for the trial judge to permit Appellee in closing argument to question Appellant's medical bills, treatment, and lost wages. We find that the trial judge's instructions to the jury adequately covered the applicable law. Furthermore, we agree with the trial judge's finding that Appellee's statements casting doubt upon the reasonableness and necessity of the Appellant's medical bills, treatment, and lost wages were properly characterized as argument and not evidence; as such, the statements were not improper or prejudicial.

## I. BACKGROUND

On November 21, 1993, William Joseph Farley, Jr., in the course and scope of his employment, was driving a United States Postal Service truck northbound on Park Heights Avenue in Baltimore, Maryland. Mr. Farley was hit by Lamont Gregory, who was driving a van southbound on Park Heights Avenue and attempting to pass a bus by moving to the left lane. Gregory's vehicle straddled the double yellow line, which caused the side view mirrors of his van and Mr. Farley's truck to strike each other. At the time of the collision, Gregory had a $25,000 automobile liability insurance policy with State Farm Mutual Insurance Company (State

Farm), and Mr. Farley had an automobile insurance policy with Allstate Insurance Company (Allstate), which included a provision for underinsured motorist benefits.

Mr. Farley did not request an ambulance at the scene of the accident. After the collision, Mr. Farley was referred to Dr. Marcel Reischer by his attorney. Mr. Farley obtained medical treatment from Dr. Reischer from November 21, 1993, until August 11, 1994, for which his bills totaled $12,087.02. Mr. Farley also claims that he lost wages of $7,973.07 due to his missing two weeks of work right after the accident and then being on a light duty job for the next two months, which consisted of approximately 28 hours of work per week.

On February 27, 1995, Mr. Farley and his wife, Ana, filed suit against Gregory and Allstate in the Circuit Court for Baltimore City, alleging negligence against Gregory and breach of contract against Allstate for not paying out the underinsured motorist benefits available under their policy. Specifically, the Farleys sought compensation for medical bills, lost wages, pain and suffering, and loss of consortium. On December 4, 1996, Allstate filed a motion for summary judgment, contending that Gregory was negligent as a matter of law. The motion was granted at the hearing. Subsequently, Gregory offered to settle the case with the Farleys for $25,-000, which was the full amount of Gregory's insurance policy with State Farm.[1] A release was signed on June 9, 1997, and Gregory was then dropped from the lawsuit.

The Farleys alleged that their damages were much greater than $25,000;[2] therefore, on January 26–27, 1998, there was a

---

1. Once State Farm Mutual Insurance Company was presented with approximately $21,000 in special damages claimed and liability was decided in favor of Mr. Farley, the insurance carrier offered its policy limits of $25,000.

2. In their complaint against Lamont Gregory and Allstate Insurance Company (Allstate), the Farleys claimed damages in the following amounts: (1) in Count One against Gregory for negligence, Mr. Farley claimed $200,000 damages; (2) in Count Two against Gregory for damages to the marriage, the Farleys claimed $100,000 damages; (3) in Count Three against Allstate for breach of contract, Mr. Farley claimed

jury trial with Judge Thomas J.S. Waxter presiding. The trial concerned only the breach of contract action against Allstate; specifically, the issue of nonpayment of underinsured motorist benefits. At trial, Dr. Reischer testified about Mr. Farley's injuries in general and also as to whether Mr. Farley was left with any permanent injury to his left hip as a result of the accident and what, if any, type of future medical treatment he would require. Dr. Reischer also testified that Mr. Farley had experienced both prior and subsequent motor vehicle accidents, occurring in 1986 and 1996, respectively.

At the conclusion of the trial, the jury rendered a verdict in favor of the Farleys for $31,087.02, with interest and costs against Allstate. The verdict was broken down as follows:

| | | |
|---|---|---|
| 1. | Past medical expenses | $12,087.02 |
| 2. | Past lost wages | 4,000.00 |
| 3. | Noneconomic damages | 10,000.00 |
| 4. | Damages to marital relationship | 5,000.00 |
| | **TOTAL:** | **$31,087.02** |

The Farleys believed they did not receive sufficient damages so on February 5, 1998, they filed a motion for a new trial, which was denied by the court on March 13, 1998. On April 8, 1998, the Farleys appealed to the Court of Special Appeals. This Court granted certiorari on its own motion.

## II.  DISCUSSION AND ANALYSIS

### A.  The Insurance Contract

██  The primary issue we must decide is whether in a breach of contract action against an automobile insurer for nonpayment of underinsured motorist benefits, the contract itself is admissible into evidence. Specifically, in the instant case, we are examining whether the amount of underinsured motorist benefits available under the Farleys' insurance contract with Allstate should have been permitted into evidence at trial.

--------

$200,000 damages; and (4) in Count Four against Allstate for breach of contract, the Farleys claimed $100,000 damages.

Prior to the start of the trial testimony, Judge Waxter instructed counsel not to divulge to the jury the terms of the insurance contract, including its policy limits, nor the amount of the settlement with Gregory. The trial judge also instructed counsel not to inform the jurors that the case involved underinsured motorist coverage. The Farleys maintain that by not allowing the contract into evidence, the trial judge prevented the jurors from seeing the "whole picture," thus causing them to decide the case in a "vacuum" and prejudicing the verdict. We disagree for the following reasons.

We begin our analysis of this issue by noting that
"[f]or an item of evidence to be admissible, it must be both relevant and material. Evidence is material if it tends to establish a proposition that has legal significance to the litigation. Evidence is relevant if it is sufficiently probative of a proposition that, if established, would have legal significance to the litigation."
*Paige v. Manuzak,* 57 Md.App. 621, 632, 471 A.2d 758, 763 (1984).

The admissibility of evidence, including rulings on its relevance, is left to the sound discretion of the trial court, and absent a showing of abuse of that discretion, its rulings will not be disturbed on appeal. *White v. State,* 324 Md. 626, 636–37, 598 A.2d 187, 192 (1991). The trial court also determines whether the probative value of the evidence outweighs any unfair prejudice. *Sowell v. State,* 122 Md.App. 222, 228, 712 A.2d 96, 98 (1998). If evidence is more prejudicial than probative, it should not be admissible at trial.

In Maryland, the general rule is that evidence of a defendant's insurance is inadmissible to show fault or lack thereof. *Jones v. Federal Paper Bd. Co.,* 252 Md. 475, 494, 250 A.2d 653, 664 (1969). In cases where the insurance carrier is a party to the litigation, obviously the existence of insurance cannot be kept from the jury. In such cases, however, as we will discuss *infra,* the amount of uninsured/underinsured motorist coverage should not be disclosed unless the amount itself is in controversy.

Maryland Rule 2–402, "Scope of discovery," provides in pertinent part:

"(b) *Insurance agreements.* A party may obtain discovery of the existence and contents of any insurance agreement under which any person carrying on an insurance business might be liable to satisfy part or all of a judgment that might be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment. *Information concerning the insurance agreement is not by reason of disclosure admissible in evidence at trial."* (Emphasis added).

The rationale for this rule of inadmissibility as to the contents of an insurance contract at trial is that the amount of an insured's coverage is not relevant to the jury's consideration of damages. To allow coverage amounts into evidence would be more prejudicial than probative. Indeed, if the jury were provided with a definitive amount of available policy limits the likely result would be a distorted jury verdict.

This Court has already spoken on the main issue raised in this appeal; therefore, we need look no further than *Allstate Insurance Co. v. Miller,* 315 Md. 182, 553 A.2d 1268 (1989), to resolve the controversy. We held in *Miller* that the amount of uninsured/underinsured motorist coverage should not be disclosed to the jury unless the amount itself is in controversy. In *Miller,* which involved a factual scenario similar to the instant case, Mary Miller was a passenger in her employer's vehicle when she was injured in a two-car collision. Her employer had a policy with Allstate that covered any passenger injured by an uninsured motorist. Like the Farleys, Miller alleged negligence against the uninsured driver of the other car, Gregory Sowell, and also brought a breach of contract action against Allstate as to the uninsured motorist provision of her employer's policy. Sowell's case went into default; thus, the trial only dealt with the issue of damages. At the close of trial, as in the present case, we found that

"[t]he circuit court's instructions directed the jury to only consider the issue of the plaintiff's damages. The jury was

directed to consider the elements of damage that typically are involved in a tort case. What was before the jury was the damages, if any, arising from the tort action of *Miller v. Sowell,* Sowell's liability having been determined by the order of default."

*Miller,* 315 Md. at 184–85, 553 A.2d at 1269.

The jury in *Miller* returned a verdict in excess of the uninsured benefit limits. In a post judgment motion, Allstate argued that a jury verdict against an insurer that exceeds its uninsured third party policy limits should be reduced by the trial judge to the amount of the contractual coverage. In response, Miller contended that Allstate had the burden of establishing and proving the limits of its liability to the jury, and that since the insurer elected not to enter the policy limits into evidence at trial, it could not offer this evidence for the first time in a post-trial motion. We stated:

"[Miller's] argument might be persuasive had this case gone to the jury on the contract claim against Allstate. But, as we have seen, what actually went to the jury was the question of damages arising from the tort claim of Miller against Sowell. *We are dealing with what was functionally presented to the jury as a tort case."* (Emphasis added).

*Miller,* 315 Md. at 190, 553 A.2d at 1271.

In finding that the trial court should have reduced the amount of judgment against Allstate in keeping with the contractual limitations of the policy, we held:

"*[T]he amount of uninsured motorist coverage should not be disclosed unless the amount is in controversy.*

\* \* \*

*[W]hat the jury was directed to consider, and all the jury was directed to consider, was the issue of damages in a tort case.* In this posture of the case, and under these circumstances, rather than require a party to establish uninsured motorist policy limits as an affirmative defense or as a limitation of exposure, *the better rule is to allow the jury to make its decision on the issue of damages ·without being*

*informed of the amount of coverage available.* Therefore, the admission of uninsured motorist coverage amounts should not be a tactical decision left to the parties' discretion. *The fact of the limit of uninsured motorist coverage is irrelevant to the issue of the amount of tort damages."* (Emphasis added and footnote omitted).

*Miller,* 315 Md. at 191–92, 553 A.2d at 1272–73.

█ In this opinion, we reaffirm our holding in *Miller* that the amount of policy limits is in no way probative of the issue of damages, absent a controversy in the amount of coverage itself. In this case, as in *Miller,* the amount of underinsured motorist coverage is not in controversy. Nowhere in the Farleys' actions against either Gregory or Allstate do they dispute the policy limits; they only seek compensation for medical bills, lost wages, pain and suffering, and loss of consortium. Whether the underinsured motorist coverage was $25,000 or $1 million is not probative on the amount of the Farleys' alleged pain and suffering and loss of consortium, nor to their claim for medical bills and lost wages.

Thus, we affirm the trial judge's ruling that the Farleys' policy with Allstate was inadmissible, as it was not relevant to the issue of the Farleys' damages. Even if Judge Waxter had found the insurance policy to be material and relevant, he would not have abused his discretion in determining that its prejudicial effect in this case outweighed its probative value, thus making it inadmissible at trial.

Like *Miller,* this case is "functionally ... a tort case," the purpose of which is to establish the damages that Allstate is required to pay under the underinsured motorist portion of the Farleys' policy. As stated earlier, Gregory's tort liability of $25,000 was established prior to trial but the Farleys believed their damages were much greater than this. Consequently, they sought compensation under the underinsured motorist provision of their Allstate insurance policy for tort—not contract—damages. Therefore, this action is not, as the Farleys suggest, a contract action in the sense that any provisions of the insurance policy were at issue or that cover-

age was being denied based upon language in the insurance contract. The jury was not required to interpret any provisions of the contract in accordance with any principles of contract law: its sole responsibility was to listen to the evidence and determine what amount, if any, Allstate should be obligated to pay based on the testimony of the Farleys and their doctors.

The Farleys emphasize that they brought a contract, not a tort, action against Allstate, but clearly no other cause of action could be brought by an insured against his or her insurance carrier in this context. Thus, Judge Waxter properly instructed the jury to consider the issue of damages in a tort case. The verdict sheet reflects the tort—not contract—flavor of the case when it directs the jurors to decide the amounts, if any, to be given for "noneconomic damages" and "damages to marital relationship."

### B. The Jury Instructions

The next issue we must resolve is whether the trial judge erred in refusing to give the Farleys' requested jury instructions six, seven, and ten. Before we turn to the specific instructions at issue, we state some general principles regarding the standard of review for jury instructions.

We have held that the standard of review for jury instructions is that so long as the law is fairly covered by the jury instructions, reviewing courts should not disturb them. *Jacobson v. Julian*, 246 Md. 549, 561, 229 A.2d 108, 116 (1967). Accordingly, Md. Rule 2–520, "Instructions to the jury," states in pertinent part:

"(c) *How given.* The court may instruct the jury, orally or in writing or both, by granting requested instructions, by giving instructions on its own, or by combining any of these methods. *The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.*" (Emphasis added).

*See also Myers v. Alessi*, 80 Md.App. 124, 132, 560 A.2d 59, 62 (1989)("It is firmly established that under Md.

Rule 2–520(c) a trial judge is not obliged to give a requested instruction if the matter is fairly covered in the instructions actually given.") Thus, simply because a requested instruction is an accurate statement of the law and supported by the evidence does not mean the trial judge is required to give it to the jury. So long as the trial judge has covered the applicable law in another instruction, or combination of instructions, Md. Rule 2–520(c) makes clear that he or she does not have to give it to the jurors.

In reviewing the propriety of a trial court's denial of a requested jury instruction, we must examine "whether the requested instruction was a correct exposition of the law, whether that law was applicable in light of the evidence before the jury, and finally whether the substance of the requested instruction was fairly covered by the instruction actually given." *Wegad v. Howard Street Jewelers*, 326 Md. 409, 414, 605 A.2d 123, 126 (1992). Moreover, the standard for reversible error places the burden on the complaining party to show both prejudice and error. *Harris v. Harris*, 310 Md. 310, 319, 529 A.2d 356, 360 (1987).

In applying these general principles to this case, we find that the Farleys have not demonstrated that any prejudice and error resulted from the trial judge not giving their requested jury instructions, in that the instructions he gave to the jury adequately covered the applicable law. The Farleys allege that prejudice and error are demonstrated by their insufficient damage award. We disagree. As we will discuss in Part II.C.1–3., *infra*, the jury's verdict was not improperly influenced by Judge Waxter's decision not to give the Farleys' requested instructions. We now turn to an examination of the jury instructions at issue in this appeal.

### 1.  Instruction # 6

The Farleys argue that the trial court erred in failing to give their requested jury instruction number six, which provided:

"The Court instructs the jury that if they find for the Plaintiff, they may award damages for those results which are the natural, proximate and direct effect of the injury. It is not necessary that the particular results were either foreseen or contemplated by the wrongdoer."

At trial, the Farleys' counsel excepted to the judge's decision to not give the jury their requested prayer, stating: "I think it's always a wise instruction to give because it allows the jury ... not [to] speculate on what was expected or whether the Defendant could or expected this to happen." In their brief to this Court, the Farleys assert that because the jury was not instructed that Gregory was liable for all damages, foreseen and unforeseen, it was able to ignore the extent of the Farleys' damages, resulting in a "verdict that did not adequately and fairly compensate the Appellants." Other than making this general statement in their brief, the Farleys have not indicated how the trial judge's failure to give this instruction resulted in an inadequate verdict.

We concur with the trial court that the instructions given were adequate, and note that there was no evidence in this case that Mr. Farley's injuries were unforeseen or not contemplated. His injuries arose out of a typical automobile accident, and Judge Waxter properly instructed the jury on how to assess damages in a personal injury case, to include non-economic damages and causation, stating in pertinent part:

"Now, in an action for damages for personal injuries, you shall consider the following: * * * (2) The effect such injuries have had on the overall physical and mental health and well being of the Plaintiffs; the physical pain and mental anguish suffered in the past and with reasonable probability, may be expected to be experienced in the future.... * * * Your verdict must be itemized [to include] * * * (3) the non-economic damages, including any pain, suffering, inconvenience, physical impairment or other non-pecuniary damage. * * * You may find from the evidence that Mr. William Farley, Jr.[,] will sustain a permanent injury from the injuries proximately and directly sustained in this accident and you may consider any effects

upon him during his lifetime that he may have, that will fairly and justly compensate him for any such permanent injuries that you find were proximately and directly caused by this accident."

Using a special verdict sheet, the jury found that Mr. Farley had sustained injuries and damages proximately caused by the collision and awarded what it determined to be the appropriate damages. *See* Part I., *supra,* for the specific breakdown of the damages. We find that the requested instruction was adequately covered by the instructions given, which provided the jury with the applicable law to determine the Farleys' damage award.

### 2. Instruction # 7

▇▇▇ The Farleys also argue that the trial judge erred in failing to give their requested jury instruction number seven, which stated:

"The Court instructs the jury that in the event the verdict shall be for the Plaintiff, William J. Farley, Jr., they may award him such amounts of money as he expended or was obligated to expend for medical care and treatment due to the accident complained of and if they find that he is now or in all probability will be in the future in need of medical care and treatment they may award him such sum as will be just, reasonable and proper compensation therefore."

In excepting to the judge's refusal to give his clients' requested instruction, counsel for the Farleys stated:

"Therefore, what Your Honor discussed past medical expenses, I believe that there was more than sufficient evidence that he presented to the jury that he will, in all probability, require future medical care and there was sufficient bench marks in the issuing of the present day cost of such treatment to the jury that the award, no one ever knows the future with an absolute certainty, but certainly there was enough of the jury to do that without any wild speculation."

As with the previous instruction, in their brief the Farleys maintain that because the trial judge did not give this instruction to the jury, they received an insufficient verdict. The Farleys allege that the medical bills introduced into evidence provided a sound basis for the jury to award damages for future medical care and treatment, as did Dr. Reischer's expert testimony and the life tables that demonstrated Mr. Farley's life expectancy. In addition, the Farleys contend that this instruction directly relates to future noneconomic damages and damages to the marital relationship.

During Dr. Reischer's testimony, the following exchange occurred on redirect:

"[Farleys' Counsel:] Doctor, do you believe that [Mr. Farley] will require any future medical care for that injury [to his left hip]?

[Reischer]: Yes. Yes, I think he will occasionally require an injection, may require some physical therapy.

[Farleys' Counsel:] *Is there any particular time frame in which, or frequency in which, this may occur?*

[Reischer:] *Not really.* I suspect that [if] he's going to get very, very active, it may happen, this will probably, this may be kind of, like, a weak link of his and I think that's probable.

[Farleys' Counsel:] And that would be, then, the similar injection to which you just described and maybe physical therapy?

[Reischer:] I would reexamine him, obviously, and have to make a determination at that time. But certainly, if it's the identical thing and that's something that helps as a result of it, then I would inject that area, or perhaps a different area as well as probably put him on a therapy program.

[Farleys' Counsel:] And I take it, from that which you've told us, that you don't anticipate that there's any form of surgical procedure that would benefit him?

[Reischer:] I don't think so." (Emphasis added).

The trial judge found Dr. Reischer's testimony as to future medical expenses "speculative." He also found that the fact that Mr. Farley was involved in a subsequent motor vehicle accident in 1996 confused the issue for the jury as to the definitive source of Mr. Farley's alleged permanent injury. The trial judge then refused to offer the instruction to the jury, stating to the attorneys that "the doctor was not ... sufficiently clear to permit the jury [to] ... engage in rank speculation [as to this issue]." Consequently, Judge Waxter's instruction to the jury on medical care and treatment related only to past medical expenses: "Now, in an action for damages for personal injuries, you shall consider the following: * * * the medical and other expenses, reasonably and necessarily incurred in the past.... * * * Your verdict must be itemized: (1) Past medical expenses...."

We have consistently held that an expert witness must base his or her opinion on "reasonable probability or reasonable certainty" and not on "mere possibilities." *Ager v. Baltimore Transit Co.*, 213 Md. 414, 421, 132 A.2d 469, 473 (1957). In the instant case, the issue is whether the evidence as to future medical care and treatment was sufficient to require submission to the jury of the requested instruction. Dr. Reischer's testimony was that Mr. Farley may require an injection if a future examination indicated it is necessary and may require physical therapy. The trial judge concluded, and we agree, that this testimony as to future medical treatment is far too speculative.

Thus, Judge Waxter did not err in finding that Dr. Reischer's opinion as to Mr. Farley's need for future medical care and treatment was based on mere possibility and not probability. In denying the instruction, the trial judge stated: "There is not legally sufficient evidence of future medical expense." We affirm Judge Waxter's finding that the requested jury instruction was not in accordance with the evidence, which was not sufficiently detailed and certain. The instruction that the judge gave to the jury adequately covered the applicable law.

### 3. Instruction # 10

Finally, the Farleys argue that the trial court erred in failing to give their requested jury instruction number ten, which stated:

"The Court instructs the Jury that they may find a permanent injury to the Plaintiff if they find any one of these four circumstances:

1. The testimony of a medical expert that the injury is permanent;

2. The injury by its very nature establishes permanency;

3. An inference of permanency due to the passage of time between the accident and the time of the trial; and

4. A lapse of time between the accident and the time of trial and the testimony of an expert medical witness tending to establish permanency."

During the redirect of Dr. Reischer, the following exchange occurred:

"[Farleys' Counsel:] Thereafter, when did you see Mr. Farley?

[Reischer:] I saw him again on July the 11th. He was doing pretty well. He was getting a little bit of stiffness, but he's much better.

[Farleys' Counsel:] And did you prescribe any further treatment at that time?

[Reischer:] Just a get-on-with-your-life and let's see you in a few weeks and if all goes well, I'll discharge him.

[Farleys' Counsel:] When did you next see him?

[Reischer:] I saw him next on August 22nd, 1994, which is when I discharged him. He still had limitation of motion in his joint. He still had some tenderness in the truncanteric region. There's no weakness at that point. He was still having some pain. He was sleeping better though and he was ... for the most part ... doing better. *I do feel he was left with a permanency as a result of the injuries,* but he was significantly better than [when] we originally saw

him and was significantly better than when we initiated treatment as a result of the treatment, I felt.

[Farleys' Counsel:] *And you say, you felt that at that time, he was left with a permanent injury?*

[Reischer:] *Yes.*

[Farleys' Counsel:] And when you're giving us your opinion in that, you're expressing that with a reasonable degree of medical probability.

[Reischer:] Yes." (Emphasis added).

Prior to instructing the jury, Judge Waxter told the attorneys that he was:

"concerned about an argument about permanent injury in a case, *where [there] is evidence of permanent, but there is also a subsequent accident.*

\* \* \*

I'm still concerned about the permanent injury aspect here. The testimony is permanent injury, but I think neither side offered sufficient evidence so that I could say you can't argue permanent injury. *He [Dr. Reischer] finds a permanent injury . . . there's no question about that.* \* \* \* *But that's as far as I'm going to go."* (Emphasis added).

Judge Waxter then gave the jury the following instruction as to permanent injury:

"Now, in an action for damages for personal injuries, you shall consider the following: (1) The personal injuries sustained and their extent and duration. . . . \* \* \* Your verdict must be itemized [to include] \* \* \* (3) the non-economic damages, including any . . . physical impairment. . . . \* \* \**You may find from the evidence that Mr. William Farley, Jr.[,] will sustain a permanent injury from the injuries proximately and directly sustained in this accident* and you may consider any effects upon him during his lifetime that he may have, that will fairly and justly compensate him for any such permanent injuries that you find were

proximately and directly caused by this accident." (Emphasis added).

The Farleys requested instruction contained four circumstances that would allow the jury to find a permanent injury. During trial when the Farleys' counsel excepted to the jury not being given their requested prayer, he claimed that three of the four circumstances were met by the evidence:

"The tenth prayer points out, is proper, the Court instructs the jury that if they find a permanent injury of the Plaintiff, if they find anyone in these four circumstances, (1) the testimony of a medical expert that the injury is permanent—*that, of course, we had;* (2) that the injury, by itself, by its very nature, establishes permanency, *that in evidence-wise we did not have;* (3) an inference of permanency due to the passage of time between the accident and the time of the trial. I would point out to the Court, *we are now four years and two months after the accident and with the Plaintiff still having the effects of the injury, and that's more than sufficient time in itself to establish permanency.* (INAUDIBLE) *would be a corroboration of the doctor's expressed opinion in this matter.* And (4), the lapse of time between the accident and the time of trial, that there's (INAUDIBLE) *expert to establish permanency.*" (Emphasis added).

We concur with the trial judge that the instruction given was adequate. Based on Dr. Reischer's testimony, the trial judge did not believe that the Farleys' more detailed and separate instruction as to permanency was appropriate to give to the jury because there was inadequate evidence of whether any permanency was due to the first accident, the second accident, or both. In responding to the Farleys' concerns about the instruction that was actually given to the jury, we note that Judge Waxter did instruct the jury as to permanent injury. Dr. Reischer's testimony indicated that an instruction on permanency was required; accordingly, the judge's instruction adequately covered the first circumstance of the Farleys' requested prayer.

■ As the Farleys' attorney concedes, there was no evidence presented that met the second circumstance. As to the third and fourth circumstances, the Farleys claim that the fact that Mr. Farley was still complaining of pain approximately four years after the accident establishes that there was a permanent injury caused by the accident. We agree with the trial judge that the fact that the plaintiff was still complaining of pain four years and two months after the accident does not serve as proof of permanency, particularly where a subsequent accident is involved. Contrary to the Farleys' assertions, while Dr. Reischer's testimony indicated that a permanency instruction was required, his testimony did not draw any conclusions whatsoever that passage of time leads to permanency.

■ Therefore, we find that Judge Waxter properly instructed the jury that it could find that Mr. Farley suffered a permanent injury caused by the accident. There is no doubt from Dr. Reischer's testimony that an instruction on permanency was required, but the Farley's instruction was incorrect in that it assumed passage of time equaled permanency. The trial judge was correct in finding that this was not so.

## C. The Closing Argument

■ We now turn to the final issue, which is whether the trial court erred by permitting Allstate in its closing arguments to argue the reasonableness and necessity of Mr. Farley's medical bills, treatment, and lost wages. Allstate's counsel stated the following during his closing argument to the jury:

> "We admit that this gentleman has incurred these medical bills and that [they were] incurred in a quick nine-month period and to then come in here, though, and embellish upon that which is plainfully [sic] before this jury by several hundred thousand dollars. That, to me, is abuse of the system. It's an abuse of common sense. . . .

\* \* \*

I have to say that the medicals are a little overreaching and I don't know that all $12,000 worth of medical bills are fair and reasonable, but they certainly were incurred a long time before I came along ... and there's nothing I can do now that they [are] incurred. They're there. You know, there's $12,000. Is there any past lost wages? He was injured on the job. Did he miss two weeks of work? Yes. I don't know what you get for two weeks of work with the postal service, but I don't think it's the $7,000 or $8,000 [he's] asking for. I think he's overreached there...."

The Farleys claim that the closing arguments made by Allstate's counsel were improper and prejudicial, resulting in an inadequate damage award. They allege that Allstate argued facts not in evidence, in violation of Judge Waxter's mandate that "counsel should not make an argument unless there's evidence in the record to support the argument." When Judge Waxter made this statement, however, he was not discussing closing arguments, which are given rather broad leeway, but instead was instructing counsel on the upcoming trial testimony. Later, when the trial judge was instructing the jury before it began deliberations, he stated: "Opening statement and closing argument [are] not evidence. \* \* \* [A]ny suggestions ... by counsel in final argument are simply that. They are argument. They are not evidence in the case. You may take them if you want to [or] not, if you choose, but they're not evidence."

Allstate's closing arguments were just as Judge Waxter described them—argument and not evidence. As such, it was perfectly appropriate in closing arguments for Allstate's counsel to cast doubt upon the reasonableness and necessity of Mr. Farley's medical bills, treatment, and lost wages. Contrary to the Farleys' assertions, the record indicates that Allstate's arguments as to the reasonableness and necessity of Mr. Farley's medical bills, treatment, and lost wages were based on facts in evidence. For example, Allstate's counsel referred to the medical bills as "overreaching" based upon the following

facts: (1) Mr. Farley was in a large tractor-trailer truck and was sideswiped by a much smaller van; (2) Mr. Farley never requested an ambulance at the scene; (3) Mr. Farley only missed two weeks of work and has not missed a single day of work in the nearly four years after the accident, yet he had nine months of medical treatment with physical therapists, a rheumatologist, and an orthopedic surgeon; and (4) Mr. Farley had been in both a previous and subsequent automobile accident where it is entirely possible that injuries to the same areas at issue in the instant case were sustained.

The Farleys also contend that, because Allstate did not object to the admission of the medical bills at trial, Allstate in essence stipulated to the bills and therefore should not be referring to them as "overreaching" in closing arguments. However, simply because the medical bills were entered into evidence without objection from Allstate does not mean that Allstate agreed as to their contents. The lack of objection by Allstate merely indicated that there was no legal reason to prevent the medical bills from being accepted into evidence.

It is interesting that the Farleys raise the issue of non-objection on the part of Allstate as to the admissibility of the medical bills because their counsel objected only one time during Allstate's alleged prejudicial and improper closing argument. As to this one objection, the Farleys state in their brief that "the trial court did not provide Appellants' counsel an opportunity to explain his objection." It was incumbent on the Farleys' counsel, however, to "request specific relief, such as a motion for mistrial, to strike or for a further cautionary instruction," such as emphasizing that the remarks of counsel in closing arguments are not evidence. *Cam's Rugs v. Buck*, 87 Md.App. 561, 573, 590 A.2d 1060, 1066 (1991), *vacated on other grounds by Buck v. Cam's Rugs*, 328 Md. 51, 612 A.2d 1294 (1992). The Farleys' counsel did not take any of these protective actions to guard against any possible prejudicial effects due to Allstate's allegedly improper remarks.

During oral arguments, counsel for the Farleys stated: "I suggest to the Court that the comments and suggestions from

the argument were so egregious that the [trial] court on its own should have jumped in and stopped it." But as we stated in *Brinand v. Denzik:* "In the absence of any further action by appellant, there was no duty upon the trial court to make further reference to the matter." 226 Md. 287, 293, 173 A.2d 203, 206 (1961).

In conclusion, the trial judge properly instructed the members of the jury that they were "the sole judges of whether testimony should be believed. * * * You should give expert testimony the weight and value that you believe it should have." Allstate's closing argument was intended to persuade the jury to accord the expert testimony as little weight as possible, which is the essence of trial counsel's role in our adversary system. Allstate's comments as to the appropriateness of Mr. Farley's medical bills, treatment, and lost wages were made in the spirit of zealous advocacy for its client. For these reasons, we do not find that Allstate's closing argument was prejudicial or improper; consequently, the trial court did not err by permitting the statements objected to in this appeal.

Even if Allstate's comments during closing arguments were prejudicial and resulted in an inadequate verdict, it was incumbent upon Farleys' counsel to immediately object so that the trial judge could promptly rule on the matter. *See Cam's Rugs,* 87 Md.App. at 577, 590 A.2d at 1067–68 ("We are convinced that a warning to appellant's counsel and an instruction to the jury to disregard his remarks would have protected appellee from any prejudice.").

### III. CONCLUSION

For the reasons stated in this opinion, we affirm the judgment of the trial court.[3] The Farleys have failed to establish how any of the errors they allege were made by the trial court

---

**3.** Our affirmance is without prejudice for the trial judge to enter a credit as to the amount of the tortfeasor's liability, which was settled prior to trial. This credit may be entered pursuant to Maryland Code (1957, 1994 Repl.Vol.), Article 48A, § 541(c)(3).

prejudiced their verdict. On the contrary, not only did the Farleys' receive compensation for Mr. Farley's past medical bills and lost wages, the jury went beyond these out-of-pocket expenses and awarded $10,000 in noneconomic damages and $5,000 for damages to the marital relationship.

Thus, for the reasons stated *supra*, we hold that the trial court did nor err in refusing to admit the automobile insurance contract into evidence, as its admission would be more prejudicial than probative. Unless the amount itself is in controversy, the admission of the contract into evidence, in order to get before the jury the available amount of underinsured motorist coverage, would likely result in a distorted jury verdict.

As to the remaining issues, we hold that the trial court did not err by failing to give the jury the Appellants' requested instructions, nor was it error for the trial judge to permit Appellee in closing argument to question Appellant's medical bills, treatment, and lost wages. We find that the trial judge's instructions to the jury adequately covered the applicable law. Furthermore, we agree with the trial judge's finding that Appellee's statements casting doubt upon the reasonableness and necessity of the Appellant's medical bills, treatment, and lost wages were properly characterized as argument and not evidence; as such, the statements were not improper or prejudicial.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**