REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No.  689

September Term, 2014

---

RAMACHANDRA S. HOSMANE

v.

KATHERINE SELEY-RADTKE, ET AL.

---

Woodward,
Reed,
Raker, Irma S.
   (Retired, specially assigned),

JJ.

---

Opinion by Raker, J.

---

Filed: February 24, 2016

In this defamation case of a private person and not a public figure, the primary question we address is the burden of proof a plaintiff must meet in order to overcome a qualified or conditional privilege. Appellant maintains the appropriate burden of proof is the preponderance of evidence standard; appellee maintains that standard is clear and convincing evidence.

Appellant Ramachandra S. Hosmane, Ph.D., appeals from the jury verdict in the Circuit Court for Baltimore County in favor of appellee Katherine Seley-Radtke, Ph.D., on one count of defamation and one count of invasion of privacy, false light. Appellant raises four questions for our review, which we have rephrased and reordered as follows:

> 1. Did the trial court err in instructing the jury that in order to recover, the plaintiff must prove by clear and convincing evidence the defendant made the statements at issue with actual knowledge that the statement was false, coupled with the intent to deceive another person by means of the statement?
>
> 2. Did the trial court abuse its discretion in allowing appellees' witness, Dr. Brahmi Shukla, to appear as the first witness in the trial?
>
> 3. Did the trial court abuse its discretion in allowing testimony regarding a settlement agreement between appellant and Dr. Brahmi Shukla?
>
> 4. Did the trial court err by abusing its discretion in denying appellant's requests to redact portions of two February 23, 2010 emails written by appellee Dr. Seley-Radtke that contained language that was very damaging to appellant?

We shall hold that the trial court erred in instructing the jury that the burden of proof in overcoming the conditional privilege was clear and convincing evidence rather than by a preponderance of evidence and shall reverse. Because we answer appellant's first

question in the affirmative, we will remand the case for a new trial. For the guidance of the trial court on retrial, we shall address appellant's third and fourth questions.[1]

I.

In the Circuit Court for Baltimore County, appellant Dr. Hosmane filed a two-count complaint sounding in defamation and invasion privacy, false light, against appellee Dr. Seley-Radtke. In an amended complaint, Dr. Hosmane added as additional defendants the University of Maryland, Baltimore County (UMBC) and the State of Maryland. The court granted summary judgment in favor of UMBC and the State of Maryland based on sovereign immunity. The case against appellee was consolidated for trial with Hosmane v. UMBC, (UMBC suit), a suit filed by Dr. Hosmane in December 2010, for claims arising primarily out of his involuntary retirement from UMBC. This matter proceeded to trial before a jury on April 30, 2014. The jury found in favor of appellee on the defamation and false light invasion of privacy claims.

Appellant's complaint alleged the following:

> "a. In 2009, Defendant Seley-Radtke told the chemistry department chair, at least one co-worker, general counsel for UMBC, and others, that Plaintiff [Dr. Hosmane] had keys to many offices in the chemistry department, that he had stolen private documents regarding Defendant Seley-Radtke out of said offices, and that he had even sold some of the documents for money. None of these assertions are true.

---

[1] We need not address appellant's second question, as circumstances similar to those that gave rise to that question are unlikely to reoccur upon retrial.

b. In February 2010, after Plaintiff's employment with UMBC had come to an end, Defendant Seley-Radtke wrote an email to the chemistry department chair and general counsel for UMBC in which she stated, among several defamatory statements, that Plaintiff 'is an unbalanced individual who has done some crazy and bizarre things, not to mention he's prone to sudden outbursts, and given the shootings in Alabama, I worry for my safety and for that of anyone around me . . . .'

c. The same day she wrote the email referenced above, Defendant Seley-Radtke wrote another email to these same people and referred to Plaintiff 'stealing documents' and implied that Plaintiff had falsely accused one of his students of trying to kill him. In this second email, Defendant Seley-Radtke also called Plaintiff a 'nutcase,' and said that 'it is not far-fetched that he could do something crazy at this point. . . .' These assertions are all demonstrably untrue.

d. Defendant Seley-Radtke has additionally claimed in communicating with others that Plaintiff was banned from campus following the end of his employment at UMBC and that he was also not allowed to meet with his former students. This is not true.

e. Defendant Seley-Radtke has also claimed that Plaintiff, in speaking with his students, would make comments to them about Defendant Seley-Radtke's body parts, particularly her breasts and buttocks. This is totally false.

f. Moreover, Defendant Seley-Radtke has claimed that Plaintiff tried to convince one of Defendant Seley-Radtke's former post-doctorate students to file a formal complaint against Defendant Seley-Radtke, even going so far as to offer the student a job if he would file the complaint. Again, this is entirely untrue."

In her answer to the amended complaint, *inter alia*, Dr. Seley-Radtke raised the affirmative defense of privilege, averring that any statements she may have made were privileged and confidential communications.

At the close of all of the evidence, the court discussed with counsel the proposed verdict sheet and jury instructions. The trial court found, as a matter of law, that appellee was entitled to a qualified or conditional privilege for the allegedly defamatory statements, noting that no party disagreed with that ruling. The discussion centered around the appropriate burden of proof necessary to overcome the privilege. Appellant requested the court instruct the jury from MPJI-Cv 12:12 (4th ed. 2013), which states as follows:

> "In order to recover, the plaintiff must prove by a *preponderance of the evidence* that the defendant made the statement with actual knowledge that the statement was false, coupled with the intent to deceive another person by means of the statement."

Appellee asked the court to modify the pattern instruction to change the burden of persuasion—for appellant to prove that appellee abused the conditional privilege—from the "preponderance of evidence" to "clear and convincing evidence." Appellant objected. The court agreed with appellee and instructed the jury, in relevant part, as follows:

> "In order to recover, the plaintiff must prove by *clear and convincing* evidence that the defendant made the statements with actual knowledge that the statement was false, coupled with the intent to deceive another person by means of the statement."

As noted above, the jury found in favor of appellee Dr. Seley-Radtke on the defamation and false light invasion of privacy claims, and appellant noted this timely appeal.

II.

Because we shall hold that the appropriate burden of persuasion to overcome the conditional privilege is a preponderance of the evidence, and the court erred in instructing

-4-

the jury that the standard was clear and convincing evidence, we will not here set out the parties' lengthy arguments on the other questions presented.

We address first the burden of persuasion issue. Appellant argues that the burden of persuasion for showing abuse of a conditional privilege is by the common law burden of proof "preponderance of the evidence" and not by "clear and convincing evidence." He contends that even though the clear and convincing evidence burden of persuasion is applied to certain elements of defamation cases—such as where the defamatory statement was about a public figure or with respect to the recovery of presumed damages or punitive damages—it does not apply in this case because this defamation claim is against a private individual.

Appellees argue that the trial court was correct in instructing the jury that appellant Dr. Hosmane must prove by "clear and convincing evidence" that Dr. Seley-Radtke's allegedly defamatory statements were made with actual knowledge that the statements were false, coupled with an intent to deceive another person by means of the statements. Appellee Seley-Radtke's argument is based upon her reading of *Piscatelli v. Van Smith*, 424 Md. 294, 35 A.3d 1140 (2012), and *Le Marc's Management Corp. v. Valentin*, 349 Md. 645, 709 A.2d 1222 (1998). Essentially, she is arguing that in *Piscatelli*, the Court of Appeals, in a defamation case, adopted the same standard for proving malice for punitive damages (the malice standard announced in *Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216, 652 A.2d 1117 (1995)), and malice for proving abuse of defamation privileges. She reasons that because the two substantive standards are the same, and that the standard for

proving punitive damages entitlement is clear and convincing evidence, so too is the burden

for overcoming a conditional privilege in common law defamation actions.

III.

We address which burden of persuasion is required to prove abuse of a conditional

privilege, a defense to a defamation claim, where the complainant is a private person—a

preponderance of the evidence or clear and convincing evidence.[2] We hold that a plaintiff,

who is a private individual claiming common law defamation, and not First Amendment

defamation, must prove that the defendant/publisher abused a conditional privilege by a

preponderance of the evidence. Because the trial court erred in misstating the burden of

persuasion for proving abuse of a conditional privilege to defamation, appellant was

prejudiced and we shall reverse and remand for a new trial.

To establish a *prima facie* case of the common law tort of defamation in Maryland,

a plaintiff must establish four elements: (1) that the defendant made a defamatory statement

to a third person, (2) that the statement was false, (3) that the defendant was legally at fault

in making the statement, and (4) that the plaintiff suffered harm. *Offen v. Brenner*, 402

Md. 191, 198, 935 A.2d 719, 723-24 (2007). A defamatory statement is one "which tends

---

[2] Inasmuch as a false light claim must meet the same legal standards as an allegation of defamation, we engage in analysis of the defamation claim, but the same analysis applies to the false light claim. *See Piscatelli v. Van Smith*, 424 Md. 294, 305-06, 35 A.3d 1140, 1146-47 (2012).

to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, that person." *Batson v. Shiflett*, 325 Md. 684, 722-23, 602 A.2d 1191, 1210 (1992). A false statement is one that is not substantially correct. *Id.* at 726, 602 A.2d at 1212. The plaintiff has the burden of proving falsity. *Id.* Whether a publication is defamatory is a question of law for the court.

A little historical background of the law of defamation will be helpful.[3] In the landmark Supreme Court case of *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Court entered the field of state libel law, particularly as it bears on First Amendment rights.[4] The Court held that a public official suing for defamatory statements relating to official conduct could not recover unless he or she proved, by *clear and convincing*

---

[3] "The rules that govern the law of defamation are complex and often opaque." Russ VerSteeg, *Slander & Slander Damages After Gertz and Dun & Bradstreet*, 38 Vill. L. Rev. 655, 660 (1993).

[4] As pointed out by John J. Watkins and Charles W. Schwartz in *Gertz and the Common Law of Defamation: Of Fault, Nonmedia Defendants, and Conditional Privileges*, 15 Tex. Tech. L. Rev. 823, 825 (1984):

> "Prior to the *New York Times* case in 1964, defamation was considered beyond the purview of the first amendment. Under the traditional common-law scheme, a defendant was strictly liable for publication of defamatory statements unless he could establish their truth or successfully assert a privilege. Strict liability was justified on a variety of grounds, including that of ensuring 'that the traffic in information, especially about personalities, be limited to the truth.'"

*evidence*, that "the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 279-80.

Ten years later, in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), the Court addressed the standard of liability when a private citizen is defamed by a libelous publication. The Court extended to *public figures* the *Sullivan* doctrine that a publisher is liable "only on clear and convincing proof that the defamatory falsehood was made with knowledge of its falsity or with reckless disregard for the truth." *Id.* at 342. Balancing the states' strong and legitimate interest in compensating private individuals for injury against First Amendment concerns, the Court held that so long as a state does not impose liability without fault, or strict liability, it may define for itself the appropriate standard of liability for a publisher or broadcaster of defamatory falsehoods injurious to a private individual. *Id.* at 347. In the case of private individuals, therefore, a less demanding standard was adopted by the Court, and the states were free to apply a negligence standard.

What one takes away from the Supreme Court cases is that the standards differ for public officials/public figures as opposed to private individuals, and particularly as those claims are impacted by the First Amendment. In order to trigger First Amendment implications, a defendant must show that the alleged defamatory statement related to a public official or a public figure, or is a matter of public concern. *New York Times Co.*, 376 U.S. at 281-82. Defamation actions not implicating the First Amendment, that is, those concerning private individuals only, are based upon Maryland common law. The Supreme

Court of Maine, in *Lester v. Powers*, 596 A.2d 65, 69-70 (Me. 1991), cogently explained the difference between the two actions, stating as follows:

> "Discussion of public officials and public figures on matters of public concern, the U.S. Supreme Court has declared, deserves special favor in a democratic society, and thus such discussion is subject to a conditional privilege—the First Amendment privilege—that can be overcome only by *clear and convincing evidence* of knowledge or disregard of falsity. We do not require clear and convincing evidence, *however, to overcome a conditional privilege that arises at common law and not from the First Amendment*."

*Id*. (Emphasis added).

Following *Gertz*, the Maryland Court of Appeals considered the extent to which the First Amendment to the Federal Constitution affected actions for defamation by private individuals against defendants who are not public officials or public figures, and more particularly, whether Maryland law should be changed in light of *Gertz*. *See Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976). The trial court ruled that Jacron, Sindorf's former employer, was protected by a common law conditional privilege that had not been overcome because although Sindorf had established a case of slander *per se*, Sindorf had not shown actual malice. This Court reasoned that the *Gertz* rules applied only when a private person was defamed concerning a matter of public or general interest, and finding that there was sufficient evidence of common law malice to defeat the conditional privilege protecting the defendant, reversed and remanded for a new trial. *Id.* at 588-89, 350 A.2d at 693-94. The Court of Appeals reversed this Court, holding that *Gertz* applied to actions brought by private persons regardless of whether the subject matter of the

defamation is one of public or general interest—*Gertz* also applies where a private individual is defamed as to private matters. *Id.* at 590, 350 A.2d at 694. The Court of Appeals then went on to adopt a standard of negligence for cases of purely private defamation and enunciated clearly that the quantum of proof by which the plaintiff must establish the fault of the defendant is by a preponderance of the evidence, "the quantum of proof ordinarily required in other types of actions for negligence"—seeking to "dispel any possible notion that the plaintiff must prove negligence by 'clear and convincing' evidence." *Id.* at 596-97, 350 A.2d at 697-98.

The significance of *Jacron* is that while the Court of Appeals applied the *Gertz* holding to both public and private defendants to satisfy "the compelling need for consistency and simplicity in the law of defamation," *id.* at 593, 350 A.2d at 696, the Court specified that burdens of proof by which a plaintiff must establish fault in a purely private defamation action and those implicating the First Amendment, were not similarly made consistent. The "clear and convincing" evidence test is reserved for showing "actual malice" in a First Amendment defamation-type action as articulated in *New York Times Co.* (and to establish punitive damages). *Id.* at 597, 350 A.2d at 698. To prove negligence in a purely private defamation case requires a showing by a "preponderance of the evidence." *Id.* We apply the same reasoning to the case *sub judice*.

In Maryland, as in most jurisdictions, if not abused, privilege is a defense to a defamation action. *Piscatelli v. Van Smith*, 424 Md. 294, 306-07, 35 A.3d 1140, 1147 (2012). The defense of privilege rests upon the value that sometimes, as a matter of public

policy, to foster the free communication of views in certain defined instances, a person is justified in publishing information to others without incurring liability. *Miner v. Novotny*, 304 Md. 164, 167, 498 A.2d 269, 270 (1985). Privileged communications fall into two categories: absolute and conditional privilege (or qualified privilege). *Gohari v. Darvish*, 363 Md. 42, 55 n.13, 767 A.2d 321, 327 (2001). An example of an absolute privilege would be statements by judges or lawyers in judicial proceedings or legislators in legislative proceedings. *Adams v. Peck*, 288 Md. 1, 3, 415 A.2d 292, 293 (1980). A conditional or qualified privilege arises, for example, where a person is seeking to further an interest that society regards as sufficiently important to justify some latitude for making a mistake so that publication of the defamatory statement is deemed to be conditionally or qualifiedly privileged. *Gohari*, 363 Md. at 55, 767 A.2d at 328 (quoting *Woodruff v. Trepel*, 125 Md. App. 381, 391, 725 A.2d 612, 617 (1999)). An absolute privilege provides immunity regardless of the purpose or motive of the defendant or the reasonableness of the conduct; a conditional privilege is conditioned upon the absence of malice and is forfeited if it is abused. *Piscatelli*, 424 Md. at 307, 35 A.3d at 1147.

Once the plaintiff demonstrates that a statement was defamatory, which is a matter of law for the court, then the defendant has the burden of proving that the defamatory statement was privileged. *Gohari*, 363 Md. at 73-74, 767 A.2d at 338. If the privilege is recognized, the plaintiff nonetheless may attempt to show that the privilege was abused, a question for the jury, and if successful, thus rendering the defendant liable for defamation.

In any particular case, we employ a two step analysis to determine whether a conditional privilege applies. First, we determine whether the surrounding circumstances of a communication occasion a conditional privilege. *Piscatelli*, 424 Md. at 307, 35 A.3d at 1147. Second, we determine whether the privilege was abused, *i.e.*, whether the publisher acted with actual malice. *Id*. at 307-08, 35 A.3d at 1148. Step one is a question for the court; step two is a question for the trier of fact, unless there are no material facts in dispute. *Id.*

A conditional privilege protects a person from liability where the statement was published in good faith "in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general." *Gohari*, 363 Md. at 56, 767 A.2d at 328 (quoting *Marchesi v. Franchino*, 283 Md. 131, 135-36, 387 A.2d 1129, 1131 (1978)). As noted, for a conditional privilege to defeat a claim of defamation, it is conditioned upon the absence of malice and is forfeited if it is abused. To show abuse of the privilege, the plaintiff must demonstrate that the defendant made his or her statements with malice, defined as "a person's actual knowledge that his [or her] statement is false, coupled with his [or her] intent to deceive another by means of that statement." *Piscatelli*, 424 Md. at 308-09, 35 A.3d at 1148; *Le Marc's Mgmt. Corp.*, 349 Md. at 651-56, 709 A.2d at 1225-28; *cf. Ellerin*, 337 Md. at 240, 652 A.2d at 1129.

Appellees contended at trial that Dr. Seley-Radtke's statements were in furtherance of her legitimate interests and those she shared in common with the recipient or third

parties, *i.e.*, the reputation and functioning of the Chemistry Department in general. The trial court agreed with Dr. Seley-Radtke, and found that a *conditional* privilege applied. Therefore, absolute privileges are not relevant here and, we only consider conditional privileges.

On our review of a jury instruction, we consider whether the instruction was generated by the evidence, whether it was a correct statement of the law, and whether it was otherwise covered by the instructions given by the trial court. *Johnson v. State*, 223 Md. App. 128, 138, 115 A.3d 668, 674, *cert. denied*, 445 Md. 6, 122 A.3d 975 (2015). Rule 4-325 requires the trial court to instruct the jury as to the applicable law in a case. The burden is on the complaining party to show both error and prejudice. *Farley v. Allstate Ins. Co.*, 355 Md. 34, 47, 733 A.2d 1014, 1020 (1999).

At the close of all of the evidence, the judge ruled that Dr. Seley-Radtke was entitled to a conditional privilege and that Dr. Hosmane, in order to overcome that privilege, had to prove actual malice. The parties do not dispute that a jury instruction explaining conditional privilege and the standard to overcome the privilege was a called-for instruction. Appellant Dr. Hosmane contends that the jury instruction misstated the law to the jury and that the trial court should have told the jury that the proper burden of proof to overcome conditional privilege was a preponderance of evidence, as set out in MPJI-Cv 12:12, entitled "Defamation, Conditional Privilege."

The privilege at issue in this case is the common interest privilege, a conditional privilege as opposed to an absolute privilege. Judge Douglas Nazarian, writing for a panel

of this Court in *Shirley v. Heckman*, 214 Md. App. 34, 43, 75 A.3d 421, 426 (2013), explained the purpose of the privilege as follows:

> "The common interest privilege shields a speaker against liability for defamation arising from statements 'publish[ed] to someone who shares a common interest or, relatedly, publish[ed] in defense of oneself or in the interest of others.' Dan B. Dobbs, The Law of Torts, § 413, at 1158 (2000). The privilege recognizes the broader public value in 'promo[ting] free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit.' *Gohari v. Darvish*, 363 Md. 42, 58, 767 A. 2d 321 (2001) (quoting Dobbs, § 414, at 1160-61), and when 'the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know,' *id.* at 57, 767 A.2d 321 (quoting *Hanrahan v. Kelly*, 269 Md. 21, 28, 305 A.2d 151 (1973))."

As we have noted, once the privilege attaches, the burden shifts to Dr. Hosmane to prove that Dr. Seley-Radtke breached, or abused, the conditional privilege by showing that the publication was made for a purpose other than to further the social interest entitled to protection, or by proving that Dr. Seley-Radtke acted with actual malice. *See Gohari*, 363 Md. at 64, 767 A.2d at 333.

We come to the heart of the issue in this case, and the cause for the confusion. The rub is the confusion that arises from the concept of proving malice to overcome the privilege, and the definition of malice in order to prove punitive damages. Appellees persuaded the trial court, and argue to this Court, that because our cases have said that the punitive damages definition of malice and the malice necessary to overcome the

-14-

conditional privilege are the same and determined to be uniform, that, *ipso facto*, the same burdens of persuasion follow and that both concepts require proof by clear and convincing evidence. What appellees fail to recognize is that in adopting the punitive damages *Ellerin* standard in defamation cases, in *Marchesi*, 283 Md. 131, 387 A.2d 1129, *Le Marc's Management Corp.*, 349 Md. 645, 709 A.2d 1222, and *Piscatelli*, 424 Md. 294, 35 A.3d 1140, the Court of Appeals was discussing only the *definition* of the term *malice*, and was not discussing the burdens of proof. Recognizing that malice means different things in different context, *Owens-Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992), *Garlarneau v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 504 F.3d 189, 204 (1st Cir. 2007), the Court adopted a "uniform standard" or definition of malice applicable to determining abuse of a conditional privilege and required the same to establish punitive damages. This did not change or elevate the burden of proof in common law defamation required to overcome the conditional privilege. No where did the Court of Appeals say that plaintiffs in a common law defamation action, involving private individuals, not implicating the First Amendment, were entitled to higher protection and hence the higher burden of proof. The bottom line is that the *Ellerin* malice standard is required—*i.e.*, a person's actual knowledge that her statement is false, coupled with her intent to deceive another by means of that statement (not simply reckless disregard for the truth)—to determine whether the appellee abused the common interest privilege. We hold that in common law tort defamation involving only private individuals, the burden of persuasion

-15-

a plaintiff must satisfy to overcome the conditional privilege is preponderance of the evidence, while in First Amendment cases it is clear and convincing evidence.

Our holding and analysis is consistent with this Court's case law on the issue. In *Globe Security Systems Co. v. Sterling*, 79 Md. App. 303, 556 A.2d 731 (1989), a private figure defamation case, the trial court had instructed the jury that the plaintiff had "met her burden if she established abuse of the privilege by a preponderance of the evidence," *id.* at 311, 556 A.2d at 735; *see also*, *Hanrahan*, 269 Md. at 28-32, 305 A.2d at 155-58; *Shapiro v. Massengill*, 105 Md. App. 743, 777 n.11, 661 A.2d 202, 219 (1995).

The Maryland State Bar Civil Pattern Jury Committee has wisely eliminated any confusion between the punitive damages burden of persuasion and the persuasion to overcome the conditional privilege by not mentioning the word "malice" in the instruction to the jury in describing abuse of the privilege. The instruction instead defines the word malice without mentioning the word.[5] Thus, there should be no confusion in those cases where the jury is instructed as to the punitive damages malice standard, clear and convincing evidence, and overcoming the conditional privilege, preponderance of the evidence.

---

[5] The Criminal Pattern Jury Committee took the same approach as to the use of the word "malice" in defining murder to the jury. *See* MPJI-Cr 4:17. In defining "malice," the murder instruction nowhere uses the word but instead, like the civil instruction, sets out the definition of malice.

IV.

For guidance purposes, we address appellant's evidentiary issues. Appellant asks

that we consider whether the trial court abused its discretion in denying appellant's requests

to redact two sentences contained in emails written by appellee Dr. Seley-Radtke, which

appellant asserts were very prejudicial. Appellant also argues that the trial court abused its

discretion in allowing testimony regarding a settlement agreement between appellant and

Dr. Brahmi Shukla related to an alleged sexual assault.


A. The Emails

Before the trial, in appellant's supplemental motion *in limine*, and several times

during the trial, appellant requested that the court redact two sentences in an email that

appellee Dr. Seley-Radtke wrote on February 23, 2010 to a professor in the chemistry

department and the UMBC general counsel. Appellant wanted the following two sentences

redacted from two exhibits (the sentences appeared in one exhibit—an original email

message—and in a second exhibit in the original message text of a three email chain):

> "Btw . . . I spoke to Det. John Taylor the other day and he
> mentioned that there are some potential new charges against
> Ram, due to the harassing emails. Can't that keep him off the
> campus?"

Appellant wanted the two sentences redacted because they were irrelevant, more

prejudicial than probative, and would cause jury confusion, citing Rules 5-401, 5-402 and

5-403. According to appellant, the two emails contained other text that appellant alleged

-17-

were defamatory statements made by appellee Dr. Seley-Radtke about appellant. Appellee Dr. Seley-Radtke, called as an adverse witness by appellant, referred to the emails during direct examination. The exhibits were marked but were not moved into evidence. In appellee's case in chief, appellee moved the two email exhibits 19 and 20 into evidence and appellant then again moved the court to redact the two (offending) sentences. The two exhibits were admitted without redaction. The court ruled during the trial as follows:

> "Under the totality of circumstances, given the plethora of evidence in this case, the court finds, the court is not gonna redact it. Nineteen and 20 are admitted. I, I'd be very, very surprised if this jury would pick that out in all this information as having any significance. They may, you can argue it, but the court's persuaded, the court's persuaded that it's not too prejudicial."

## B. The Settlement Agreement Testimony

With regard to a January 2010 settlement agreement between appellant and Dr. Brahmi Shukla, appellant moved *in limine* to preclude introduction of evidence relating to that agreement. Appellant argued that the settlement agreement was not admissible evidence under Rule 5-408 and would be more prejudicial than probative under Rule 5-403. The court reserved ruling on the motion, indicating that the matter could not be settled before trial and admission of the testimony would depend on the evidence presented at trial.

At trial, during Dr. Brahmi Shukla's direct testimony, appellee Dr. Seley-Radtke's counsel inquired about the settlement agreement. Appellant objected, as follows:

"[APPELLEE'S COUNSEL]: Now you also mentioned, a while back in your testimony, that there were criminal charges filed against Dr. Hosmane for the assault. What happened with that criminal case?

[APPELLANT'S COUNSEL]: Objection.

THE COURT: Overruled. You may answer the question.

[DR. SHUKLA]: It was dismissed.

[APPELLEE'S COUNSEL]: And why was it dismissed to your knowledge?

[APPELLANT'S COUNSEL]: Objection.

THE COURT: Overruled. You may answer the question.

[DR. SHUKLA]: Because there was a settlement of about $10,000.00 made, and therefore it was dismissed.

[APPELLANT'S COUNSEL]: Objection. Move to strike.

THE COURT: Overruled."

The court admitted the testimony.

C.

Before this Court, appellant argues that the email sentences referring to new charges and "harassing emails" in the two February 23, 2010 emails were very damaging to him in that the jury would infer that appellant was subject to prosecution for writing harassing emails. Appellant argues that this prejudice cost him a fair trial. Appellee argues that the court reasonably exercised its discretion in refusing to redact the two sentences of the

-19-

February 23, 2010 emails, as only speculation could support the proposition that lines from a lengthy multi-page email chain were sufficiently substantially injurious to appellant's case or likely affected the verdict below. Appellee argues that the complete emails, with the sentences in question included, are relevant to her disproving the defamatory nature of the emails—that the entirety of the emails increases or decreases the probability of the fact of their defamatory nature.

Before this Court, appellant argues that the trial court violated Rule 5-408[6] in allowing testimony relating to the settlement agreement, and that the evidence is not relevant and is highly prejudicial. Appellant asserts that none of the evidence about the settlement agreement should have been presented to the jury and that as a result of its admission, appellant suffered great prejudice. Appellee Dr. Seley-Radtke argues that the settlement agreement between appellant Dr. Hosmane and Dr. Shukla was not offered to prove the validity, invalidity or amount of the civil claim in dispute, in violation of Rule 5-408, but that the testimony was offered for another purpose—as relevant to proving the truth and non-defamatory nature of the two emails that appellant alleged were defamatory. Appellee argues that because she referred to the settlement agreement between appellant

_____

[6] RULE 5-408. COMPROMISE AND OFFERS TO COMPROMISE
(a) The following evidence is not admissible to prove the validity, invalidity, or amount of a civil claim in dispute:
    (1) Furnishing or offering or promising to furnish a valuable consideration for the purpose of compromising or attempting to compromise the claim or any other claim;
    (2) Accepting or offering to accept such consideration for that purpose; and
    (3) Conduct or statements made in compromise negotiations or mediation.

Dr. Hosmane and Dr. Shukla in the email chain, Dr. Shukla's testimony confirming that there was in fact a settlement agreement would tend to make the content of the entire emails (including parts of the emails appellant alleges are false and defamatory) more likely true than not—that because there was a settlement agreement, as mentioned in the emails, other content in the emails is more likely true, rather than false and defamatory.

We disagree with appellee. The two sentences in the two February 23, 2010 emails referring to new charges against appellant and "harassing emails" he purportedly sent, and testimony by Dr. Shukla about any settlement agreement for an alleged assault,[7] were not relevant to any issue in this defamation case. These two pieces of evidence were highly prejudicial and cast appellant in a very bad light, *i.e.*, that he was a sex abuser who paid money to resolve such a claim, that he was the subject of unrelated charges and was sending harassing emails. The purported purpose for which these two pieces of evidence were offered was that if the jury believed that parts of the email were true then the jury could or should find that the remainder of the emails was true. The logic does not follow. Unrelated charges and alleged harassing emails, or that appellant may have in fact settled an unrelated civil matter,[8] do not make the other allegations in the emails more likely or less likely true, and have no relevancy to this defamation action.

---

[7] We need not address whether the evidence was not offered to prove the validity, invalidity or amount of a civil claim in dispute.

[8] Moreover, parties settle cases for many reasons unrelated to the liability question and more often than not, in the settlement agreements, expressly state that the agreement is not an admission of liability.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID BY APPELLEE.**