7 A.3d 643

**Daniel J. BARUFALDI**

v.

**OCEAN CITY, Maryland, CHAMBER OF COMMERCE, INC.**

**No. 815, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Oct. 29, 2010.

2

4

Philip B. Zipin of Silver Spring, MD (Julie G. Martin–Korb, Rockville, MD, on the brief), for appellant.

William J. Hickey (Robert M. Gittins, on the brief) Rockville, MD, for appellee.

Panel: EYLER, DEBORAH S., WRIGHT, ARRIE W. DAVIS (Retired, Specially Assigned) JJ.

EYLER, DEBORAH S., J.

This appeal and cross-appeal arise from an employment contract dispute between the Ocean City Chamber of Commerce ("the Chamber"), the appellee/cross-appellant, and its former executive director, Daniel J. Barufaldi, the appellant/cross-appellee. Barufaldi resigned from the Chamber in January of 2007 and thereafter brought an action in the Circuit Court for Worcester County against the Chamber and members of its Board of Directors ("the Board"). He alleged breach of contract and violations of the Maryland Wage Payment and Collection Law ("WPCL"), Md.Code (2008 Repl. Vol., 2009 Supp.), §§ 3–501 *et seq.* of the Labor and Employment Article ("LE"), and, as to the individual defendants, negligent misrepresentation. All of Barufaldi's claims related to the Chamber's failure to pay incentive-based compensation under his employment contract ("the Agreement"). The Chamber counterclaimed for breach of contract premised on Barufaldi's alleged failure to perform his duties and his premature termination of the Agreement.

After several of the individual defendants were dismissed, the case was tried to a jury for three days. At the close of Barufaldi's case, the trial court granted judgment in favor of the remaining individual defendants on all counts. At the close of all the evidence, the trial court granted judgment for Barufaldi on the Chamber's counterclaim. Barufaldi's breach of contract and WPCL claims against the Chamber went to the jury.

The jury found that the Chamber had breached the Agreement and that Barufaldi was owed $60,000 in unpaid wages. It further found that the Chamber had violated the WPCL and that its failure to pay Barufaldi was not the result of a bona fide dispute. The jury declined, however, to award

Barufaldi treble damages under the WPCL.[1]

The Chamber filed post-trial motions for judgment notwithstanding the verdict ("JNOV"), for remittitur or a new trial on damages, and for a new trial. All were denied. Barufaldi filed a post-trial motion for attorneys' fees under the WPCL. His motion was denied in its entirety.

Barufaldi timely appealed from the denial of his motion for attorneys' fees. He presents one question for review, which we have rephrased:

Did the trial court err in denying his motion for attorneys' fees made pursuant to the WPCL?

The Chamber timely cross-appealed from the denial of its post-trial motions, the jury's finding that there was no bona fide dispute as to Barufaldi's entitlement to incentive pay, and the trial court's denial of certain requested jury instructions. It presents five questions for review on cross-appeal, which we have reworded and reordered:

I. Did the trial court err in dismissing the Chamber's counterclaim?

II. Did the trial court err in failing to instruct the jury on the effect of Barufaldi's alleged breach of the Agreement on his entitlement to recover?

III. Did the trial court err in failing to instruct the jury on rescission and novation?

IV. Did the trial court err in denying the Chamber's motion for judgment and JNOV motion on the issue of a bona fide dispute under the WPCL?

V. Did the admission into evidence of an unredacted letter, contrary to an order of the trial court, deprive the Chamber of a fair trial?

---

**1.** As we shall discuss, *infra*, LE section 3–507.1(b) permits, upon satisfaction of certain conditions, an award to the employee of "an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." Even though such an award may be less than triple the wage, we shall refer to it as "treble damages" for ease of discussion.

For the reasons to follow, we answer the Chamber's questions in the negative and therefore shall affirm the judgments. We answer Barufaldi's question in the affirmative and therefore shall remand for further proceedings on the motion for attorneys' fees.

## FACTS AND PROCEEDINGS

The Chamber is an association of businesses in Ocean City. Its purpose is to increase tourism and business opportunities in the community for the benefit of its members. It is composed of a non-profit entity operating a visitor center funded primarily by membership dues and grants and a for-profit entity selling the Ocean City Guide Book ("the Guide"). Sales of the Guide and advertisements in the Guide are the Chamber's major source of revenue.

In the fall of 2005, the Chamber interviewed and hired Barufaldi as its new executive director, at a base salary of $52,000 per year. He began work on November 1, 2005. Immediately prior to accepting the Chamber's offer of employment, Barufaldi was working as executive director of the Ken–Tom Chamber of Commerce in upstate New York.

A little over two months after beginning his employment, Barufaldi and the Chamber executed the Agreement. It was backdated to November 1, 2005. In its introductory paragraph, the Agreement defines "Employer" to mean the Board, the executive committee of the Board, and officers of the Chamber. Paragraphs 1 and 2 set forth Barufaldi's job responsibilities by reference to an attached job description and a list of duties. They obligate Barufaldi to perform these duties diligently and in good faith.

Paragraph 3 states that the Agreement is for a three-year term—from November 1, 2005, until October 31, 2008—and provides for automatic renewal absent written notice by either party to the Agreement.

Paragraph 4, titled "COMPENSATION OF EMPLOYEE," reads as follows:

a) As compensation for the services provided and duties performed by Employee under this Agreement, Employer shall pay Employee an annual base salary of fifty-two thousand dollars ($52,000.00) for each of the three (3) years covered by this Agreement. Such annual base salary shall be paid to Employee in bi-monthly installments.

b) As additional compensation, Employee shall be entitled to incentive-based compensation for each quarter in accordance with the terms of this subparagraph. **Employer and Employee shall, within sixty (60) days after the effective date of this Agreement, agree upon a base line net revenue figure, based upon historical financial documentation, for each quarter.** Employee's incentive compensation for the first quarter of each year shall be equal to actual net revenue for the first quarter minus the base line net revenue figure established for the first quarter, multiplied times .25. Employee's incentive compensation for the second quarter of each year shall be equal to [ (actual year-to-date net revenue) minus (year-to-date base line net revenue) ÷ 2] multiplied by 25%. Employee's incentive compensation for the third quarter of each year shall be equal to [ (actual year-to-date net revenue) minus (year-to-date base line net revenue) ÷ 3] multiplied by 25%. Employee's incentive compensation for the fourth quarter of each year shall be equal to [ (actual year-to-date net revenue) minus (year-to-date base line net revenue) ÷ 4] multiplied by 25%. This incentive compensation shall be paid to Employee on a quarterly basis within a reasonable period of time after the close of each quarter. Such incentive compensation shall be in lieu of any increases in the annual base salary and performance bonuses. Employee shall not be entitled to any compensation other than the annual base salary set forth in paragraph 4(a) and the incentive compensation set forth in this subparagraph. For purposes of this provision, "net revenue" shall mean revenue net of operating expenses and other deductions from gross revenue that are customarily made from an accounting standpoint to reach a net revenue figure. Major capital investment expenditures of a

non-recurring nature shall not be included for purposes of determining net revenue hereunder (i.e., shall not be deducted from gross revenue to arrive at net revenue). In addition, increases in dues rates shall not be included in gross revenue for purposes of determining Employee's incentive compensation hereunder. From the effective date of this Agreement through August 31, 2006, Guide and Chamber dues shall not be included as income or revenue for purposes of determining "net revenue" and calculating incentive-based compensation hereunder. Employee acknowledges and understands that achieving increases in net revenue is an objective which shall not be given priority by Employee over the duties and services which Employee agrees to diligently provide pursuant to paragraphs 1 and 2 above. Employee's activities shall not be disproportionately geared toward increasing quarterly net revenues in a way that is detrimental to Employee's diligent and full performance of the duties and services listed in Exhibit A.

(Emphasis added.) Subparagraphs "c" and "d" further state that any incentive-based compensation ceases immediately if the Agreement is terminated for cause, that Barufaldi may participate in the Chamber IRA plan, and that Barufaldi and his wife would receive health insurance coverage through the Chamber. The language of the Agreement allowed it to be terminated by the Chamber for cause only. There was no such corresponding termination right for Barufaldi.

Barufaldi asserts that he repeatedly asked then-Board president Neil Hitchcock to meet with him to determine the "base line net revenue figure" required under the Agreement, but Hitchcock refused to do so. In September of 2006, Kathy Panco replaced Hitchcock as president of the Board. Barufaldi then attempted to reach an agreement about this figure with her. While Panco initially seemed willing to work with Barufaldi to determine the "base line net revenue figure," no agreement was reached. There is no dispute that a "base line net revenue figure" never was established during Barufaldi's employment by the Chamber.

On October 31, 2006, Barufaldi met with the members of the Board and they presented him with the proposed terms of a new contract. The parties hotly dispute the genesis of this meeting and what occurred there. According to the Chamber, Barufaldi had requested a new contract because he had concluded that the Agreement's compensation provisions were unworkable. The Chamber offered him the choice to continue under the Agreement or enter into the new contract. According to Barufaldi, he wanted the Chamber to honor the terms of the Agreement and did not request a new contract. The Board, unwilling to pay him the incentive compensation to which he was entitled under the Agreement, gave him an ultimatum: "take it or leave it." He understood this to mean that the Board members had no intention of honoring his existing Agreement and that he would have no choice but to accept the new contract terms.

Under the pertinent terms of the proposed new contract, Barufaldi's base salary would increase to $65,000 annually, with no opportunity to earn incentive pay, and the Chamber would be permitted to terminate his employment without cause with 30 days' notice. Also, his wife no longer would be maintained on the Chamber health insurance policy.

According to the Chamber, Barufaldi indicated his willingness to accept the new contract. According to Barufaldi, he never agreed to the new contract. The parties agree that Barufaldi never signed the new contract, which was not drafted until after the Board meeting at which its proposed terms were presented to Barufaldi.

A little less than three months later, on January 23, 2007, Barufaldi tendered his letter of resignation, effective immediately, to Panco. Unbeknownst to the Chamber, prior to his resignation, Barufaldi had accepted an offer of employment from the Charles County Chamber of Commerce.

On April 3, 2008, Barufaldi filed the instant action against the Chamber, Hitchcock, and five other Board members, asserting, *inter alia,* breach of contract and violations of the WPCL. Both counts were premised on Barufaldi's claim that

the Chamber wrongfully had withheld incentive-based compensation due and owing under the Agreement. He sought treble damages, costs, and attorneys' fees pursuant to the WPCL.

On January 30, 2009, the Chamber filed its counterclaim asserting breach of contract and anticipatory breach of contract. The Chamber alleged that Barufaldi had materially breached the Agreement by failing to perform his duties, actively seeking employment elsewhere during the term of the Agreement, and failing to complete the three-year term. The anticipatory breach count was premised on Barufaldi's application for employment with the Charles County Chamber of Commerce.

On April 15–17, 2009, the case was tried to a jury. As noted, *supra*, Barufaldi voluntarily dismissed three of the individual defendants from the case at the start of trial and the court granted a motion for judgment in favor of the remaining two individual defendants at the close of Barufaldi's case. Barufaldi testified and called three witnesses: John Gehrig, a Board member; Panco; and Andrew Smith, a CPA who was qualified as an expert in accounting.

At the close of Barufaldi's case, the Chamber moved for judgment on the WPCL claim, arguing that there was no competent evidence from which a reasonable juror could find the absence of a bona fide dispute as to whether Barufaldi was owed wages. The Chamber argued the absence of a bona fide dispute is an essential element of the WPCL claim.[2] The Chamber did not move for judgment on the breach of contract count. The motion was denied.

The Chamber called five current and former Board members, including the former president of the Board, Hickman; Cindy Wood, the Chamber's bookkeeper during Barufaldi's tenure; the current executive director of the Charles County Chamber of Commerce; Tracy Lukasik, the executive director of the Ken–Tom Chamber of Commerce, who had replaced

---

**2.** As we shall discuss further, *infra,* this is a misstatement of the law.

Barufaldi; and its own expert in accounting, Luis Ruebel-mann. Barufaldi also testified in rebuttal and the Chamber recalled Lukasik in surrebuttal.

The major issues at trial were the meaning of the term "net revenue" under the Agreement and whether Barufaldi was entitled to receive any incentive-based pay under the express terms of the contract, *i.e.,* whether he increased "net revenue" as the parties understood that term.[3]

At the close of all the evidence, Barufaldi moved for judgment on the Chamber's counterclaim, arguing that the Chamber had failed to prove it incurred any damages as a result of the alleged breach. The court granted the motion on that basis.

The Chamber moved for judgment on the breach of contract count and renewed its motion for judgment on the WPCL. The court denied both motions.

The remaining counts went to the jury. The jury deliberated for a little over two hours before returning a verdict in favor of Barufaldi on both counts, awarding him $60,000 in damages. As discussed, *supra,* it also decided in favor of Barufaldi on the bona fide dispute question, finding that there had not been a bona fide dispute as to his entitlement to incentive-based compensation.

We shall include additional facts in our discussion of the issues. Because it is logical to do so, we shall begin our analysis with the cross-appeal.

---

**3.** Barufaldi's accounting expert opined that "net revenue" in the context of the Agreement meant "net income," *i.e.,* profitability. He concluded that the parties could not have meant "net revenue" only to mean revenue because such an interpretation would have allowed Barufaldi to increase revenues while simultaneously increasing expenses, leaving the Chamber in a worse financial state than he found it, but permitting him to receive incentive compensation.

The Chamber's accounting expert opined that the term "net revenue" required that the accounting be performed on an accrual basis (as opposed to a cash basis). He did not explicitly define the term "net revenue," but opined that it had a set meaning as an accounting term and disagreed that it meant "net income."

## CROSS–APPEAL

### I. & II.

### Counterclaim and Material Breach Doctrine

The first two issues are interrelated, so we shall consider them together. The Chamber argues that the circuit court erred in granting judgment in favor of Barufaldi on its counterclaim for breach of contract and anticipatory breach premised on Barufaldi's premature termination of the Agreement.[4] The Chamber also argues that the trial court erred by declining to instruct the jury that, to find it liable for breach of contract, the jurors first had to find that any failure on its part to pay incentive compensation under the Agreement was a material breach of the Agreement.

Barufaldi counters that the circuit court correctly determined that the Chamber did not prove that any damages flowed from his alleged breach of the Agreement and thus properly granted judgment in his favor on the counterclaim. Moreover, he maintains that, even if the Chamber did prove damages, it could not recover because, after the Chamber breached its obligation to pay incentive pay, Barufaldi no longer was obligated to perform under the Agreement. As to the proposed jury instruction on material breach, Barufaldi argues that the instructions actually given fully covered the relevant legal authority.

---

4. As noted, the Chamber asserted below that Barufaldi had breached the Agreement both by resigning and by failing to perform his duties. On appeal, its breach of contract arguments only concern Barufaldi's resignation.

 With respect to anticipatory breach, the Chamber continues to suggest that Barufaldi anticipatorily breached the contract by seeking outside employment during the term of the Agreement. This claim is not viable as a matter of law as the Chamber presented no evidence that, prior to his resignation, Barufaldi "manifested an intention not to perform," or that its breach was a response to any such manifestation. *See Maryland Civil Pattern Jury Instructions* ("MPJI") 9:26 ("A party who clearly indicates that he or she will not perform the contract may be responsible for damages, and this indication of intention not to perform may excuse the other party from performing.").

As noted above, at the close of all of the evidence, counsel for Barufaldi moved for judgment on the counterclaim, arguing that the Chamber had not proven that it had sustained any damages as a result of his alleged breach of the Agreement. The Chamber countered that there was testimony from Panco that she "donated" her time to the Chamber in the almost six months between Barufaldi's resignation in January of 2007 and the hiring of his replacement in July of 2007. That led to the following colloquy:

THE COURT: Well, that is a rather ... there[ ] is no doubt that people had to put in extra time. But as far as any specific damages, the case is lax on that. So I'm going to grant the motion.

[COUNSEL FOR THE CHAMBER]: Well, there is one item of damage, and that is, there was testimony from Todd Ferrante and Ms. Panco, that the person they did employ had to be employed at a higher salary because of the loss of Mr. Barufaldi. And the previous [administrative assistant], Sandee Sharp, had a salary of $39,000, and they had to hire somebody for $45,000. So there is a $6,000 damage issue right there.

THE COURT: I'll grant the motion.

 We review the decision to grant the motion for judgment on the counterclaim under the following standard:

When determining whether there is sufficient evidence to submit an issue to the jury, the trial court views the evidence and all inferences fairly deducible therefrom, in a light most favorable to the party opposing the motion. *Impala Platinum Ltd. v. Impala Sales,* 283 Md. 296, 327, 389 A.2d 887 (1978). If there is any competent evidence, however slight, legally sufficient as tending to prove [damages], the weight and value of such evidence should be left to the jury. *Beahm v. Shortall,* 279 Md. 321, 324, 368 A.2d 1005 (1977).

*Schreiber v. Cherry Hill Constr. Co., Inc.,* 105 Md.App. 462, 494–95, 660 A.2d 970 (1995). Thus, we must determine whether the Chamber introduced any competent evidence that it

incurred damages as a result of Barufaldi's resignation. If it did, the motion for judgment should not have been granted on that basis.

Evidence about the Chamber's damages was adduced during the testimony of Panco and Todd Ferrante, respectively president and vice-president of the Board at the time of Barufaldi's resignation. Panco testified that she was completely surprised when Barufaldi resigned and that she immediately had to step in to keep the Chamber running. To do so, she had to divert time away from her real estate business, spending four or five hours a day working on Chamber business instead. She valued the "[d]onat[ion of her] life and services and time to the Chamber" at more than $50,000.

In addition, Panco testified that the Chamber hired a replacement for its administrative assistant,[5] Sandee Sharp, in the interim between Barufaldi's resignation and the hiring of his replacement. According to Panco, the Chamber offered Sharp's replacement an annual salary of $45,000—$6,000 more than Sharp had been earning—because the replacement would have to "assume some of the [executive director's] duties to help me out."

Todd Ferrante testified consistent with Panco concerning the replacement of Sharp. He also testified that Barufaldi's resignation "took a toll on the Chamber as far as its financial capabilities." He was unable to testify to an "exact figure[ ]," however. Similarly, he testified that Chamber revenues declined in the interim between Barufaldi's resignation and the hiring of his replacement, but was unable to offer even a "ballpark figure" as to how much the revenues had declined.

We agree with the trial court that the evidence of Panco's "donated" time was not probative of damages to the Chamber. While Panco personally may have suffered a loss

---

5. The administrative assistant had resigned after more than 17 years of service, apparently because of a personality conflict with Barufaldi. The Chamber does not argue, however, that Barufaldi caused her to resign.

as a result of her decision to step in and take over the role of executive director, the Chamber did not suffer damages as a result. Thus, the sum of the evidence presented by the Chamber on damages was that it had hired a new administrative assistant at a slightly higher salary because she might have to take on additional duties owing to Barufaldi's departure. We are persuaded that this evidence was legally sufficient to establish damages and Barufaldi's motion for judgment should not have been granted on the basis offered.

Our inquiry is not over, however, because, for the Chamber to have been prejudiced by the court's ruling, there also must have been evidence of liability on Barufaldi's part. Barufaldi maintains that the Chamber's breach of the incentive pay provisions of the Agreement was material and thus ended his obligation to continue performing under the Agreement so that, as a matter of law, his resignation was not a breach of the Agreement. The Chamber counters that, even if it breached the Agreement by not paying incentive pay, its breach was not material and Barufaldi's subsequent termination of the Agreement was a breach that caused it to sustain damages. It further asserts that Barufaldi's material breach deprived him of any right to recover under the Agreement. The latter argument is the subject of the Chamber's claim of error with respect to the jury instructions.

The trial court instructed the jury as follows with respect to Barufaldi's breach of contract claim:

A contract is an agreement between two or more parties creating rights or obligations. A contract is to be interpreted so as to give effect to the parties' intentions at the time the contract was made. Usually these intentions are shown by the words and terms used in the contract. These words and terms are to be given their ordinary meaning unless such meaning will have an unreasonable result.

Each sentence of the contract should be interpreted in view of the other sentences of the contract. Those words and terms of a contract which have a technical meaning or are used in the trade or by custom to mean something

different from the meaning the words or terms have in ordinary usage should be given the technical trade or custom meaning if the contract was made in view of this technical meaning or trade or custom usage, and the technical meaning or trade or custom usage was either generally used or was actually known to the parties.

In an action for a breach of contract, the Plaintiff may recover those damages which naturally arise from the breaking of the contract. Those damages are the consequences of breaking the contract which the Defendant had reason to foresee would take place or such damages as [ ] may reasonably be supposed to have been contemplated by both parties when they made the contract.

At the conclusion of the instructions, counsel for the Chamber objected as follows:

We requested an instruction as to the breach of contract that we allege that Mr. Barufaldi committed at the time that he precipitously left the contract, which was in breach of the term of the contract, which is a breach. We requested an instruction to the effect that Mr. Barufaldi's breach should be considered by the jury in terms of whether he should be entitled to any money, assuming that the jury also found that there is a breach on behalf of the employer. The Court declined to give that instruction.

\* \* \*

Second, we asked for an instruction that the alleged breach that [ ] the Chamber [ ] failed to live up to the contract was not a material breach pursuant to the terms of the contract. The terms of the contract state, in paragraph 4(b), that ["]the employee acknowledges and understands that achieving increases in net revenue is an objective which shall not be given priority by the employee over the duties and services which the employee agrees to diligently provide pursuant to paragraph[s] 1 and 2 above. The employee's activities shall not be disproportionately geared to increasing quarterly net revenues in a way that is detrimental to

the employee's diligent and full performance of the duties and services listed in Exhibit A.["]

＊　　　＊　　　＊

We would suggest that the failure, alleged failure to pay any incentive quarterly payments is incidental and not material, and consequently, would not relieve the Plaintiff from breach of contract.

We will not reverse a judgment for a court's refusal to give a requested instruction "so long as the law is fairly covered" by the instructions as given. *Farley v. Allstate Ins. Co.*, 355 Md. 34, 46, 733 A.2d 1014 (1999); *see also* Md. Rule 2–520(c) ("The court need not grant a requested instruction if the matter is fairly covered by instructions actually given."). Our inquiry on appeal is, thus, "'whether the requested instruction was a correct exposition of the law, whether that law was applicable in light of the evidence before the jury, and finally whether the substance of the requested instruction was fairly covered by the instruction actually given.'" *Farley, supra*, 355 Md. at 47, 733 A.2d 1014 (quoting *Wegad v. Howard St. Jewelers*, 326 Md. 409, 414, 605 A.2d 123 (1992)).

It is undisputed that Barufaldi contracted for employment with the Chamber for a term of three years and that the Agreement permitted the Chamber to terminate him for cause, but included no corresponding right for Barufaldi to terminate the Agreement prior to the conclusion of its term. Thus, absent a material breach by the Chamber excusing further performance on his part, Barufaldi's resignation a little more than a year into the Agreement would establish liability on his part.

The Chamber contends that any breach on its part of the incentive pay provisions of the Agreement was immaterial. It relies on the doctrine of substantial performance, arguing that because it compensated Barufaldi at his base rate for the 14 months it employed him, it substantially complied with the Agreement. It further contends that language in the Agreement stating that "achieving increases in net revenue is an objective which shall not be given priority by Employee over

the duties and services which Employee agrees to diligently provide," makes plain that the incentive pay provisions were not central to the purpose of the Agreement. Thus, according to the Chamber, even if it committed a partial breach by failing to set a "base line net revenue figure" and not paying incentive compensation, Barufaldi remained obligated to perform. Accordingly, Barufaldi's subsequent breach of the Agreement deprived him of a right to recover.

The flaw in this argument is that Barufaldi's right to compensation earned prior to his resignation did not depend upon any future performance on his part. "[A]n employee who has performed services required in an employment contract has a vested right to the compensation he or she has earned[.]" Richard A. Lord, 19 *Williston on Contracts* 54:35 at 520 (4th ed.2001).[6] Thus, regardless of whether the Chamber's breach was material, justifying Barufaldi's termination of the Agreement, or incidental, meaning that Barufaldi materially breached the Agreement by terminating it, he would be entitled to any compensation already earned prior to his resignation. The jury calculated his earned, but unpaid, incentive compensation to be $60,000.

The Chamber's reliance upon the substantial compliance doctrine also is misplaced. The Court of Appeals explained this doctrine as follows in *Speed v. Bailey*, 153 Md. 655, 660–61, 139 A. 534 (1927):

> "It is not every partial failure to comply with the terms of a contract by one party which will entitle the other party to abandon the contract at once. In order to justify an abandonment of it and of the proper remedy growing out

---

6. An exception to this rule exists when "the facts establish a failure of performance that is both substantial and material." *Id.* at 520–21. Although the Chamber argued at trial that Barufaldi was not entitled to incentive pay because he failed to perform his duties adequately and, relatedly, did not increase revenues in such a way as to trigger the incentive pay provision, the jury found in Barufaldi's favor, thus rejecting the facts as presented by the Chamber.

An additional exception exists for compensation earned during a period in which the employee breached a duty of loyalty. *Id.* at 523–24. No such breach was alleged in the instant case.

of it, the failure of the opposite party must be a total one—the object of the contract must have been defeated or rendered unattainable by his misconduct or default. For partial derelictions and non-performance in matters not necessarily of first importance to the accomplishment of the object of the contract, the party injured must seek his remedy upon the stipulations of the contract itself. Before partial failure of performance of one party will give the other the right of rescission, the act failed to be performed must go to the root of the contract, or the failure to perform the contract must be in respect to matters which would render the performance of the rest a thing different in substance from that which was contracted for."

&ast; &ast; &ast;

"When a covenant goes only to a part of the consideration of a contract, is incidental and subordinate to its main purpose, and its breach may be compensated in damages, such a breach does not warrant a rescission of the contract, but the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom."

**By this rule, compensation in damages for slight breaches is substituted for the remedy afforded by rescission of the whole contract.** The rule rests upon the principle that greater equity will be maintained between the parties by compelling the one, injured by slight variances or failure to comply literally with all of the terms of the contract, to accept the contract as performed and recover such damages occasioned by the breach as he may be able to show. A departure from this rule would result in permitting any deviation, no matter how minute or unimportant, to be made the basis for the rescission of the contract, and allowing the one so rescinding to obtain an unfair and unconscionable advantage by electing to rescind or retain the bargain, as self-interest might dictate. The great weight of authority shows a recognition of this principle by the courts, although they are not entirely harmonious. The real and substantial

difficulty has been in applying the principle to the varying facts of each particular case. The rule has been more widely applied to building contracts, for the reason that it was found to be inequitable to allow the owner of the land to rescind a contract for the erection of a building upon his land, and thereby retain the benefits resulting from a substantial performance of the building contract, without any obligation to pay therefor.

(Quoting 6 R.C.L. 926–927.) (Emphasis added.)

In the instant case, the Agreement was not rescinded,[7] it was canceled. *See* Sarah Howard Jenkins 13 *Corbin on Contracts* § 67.2 at 8–9 (2003) (defining "cancellation" as when either party puts an end to a contract because of a breach by the other). Whether Barufaldi was entitled to rescind the Agreement never was at issue. As is clear from the above discussion, however, he maintained his right to seek damages for the breach of the compensation provisions of the Agreement regardless of whether he also possessed a right of rescission or a right of cancellation. *See also Hartford Accident & Indem. Co. v. Sherwood Brands, Inc.*, 111 Md.App. 94, 119 n. 13, 680 A.2d 554 (1996) ("The remedy for a partial breach is the damages suffered as a result of that breach."), *rev'd on other grounds*, 347 Md. 32, 698 A.2d 1078 (1997). That he also may have subsequently breached the Agreement and caused damages is properly the subject of the Chamber's counterclaim and does not affect his independent right to recover for a breach of the compensation provisions for work already performed.

---

7. This Court explained the nature of a rescission in *Dialist Co. v. Pulford*, 42 Md.App. 173, 177 n. 3, 399 A.2d 1374 (1979):

> The rescission of a contract involves voiding it *ab initio* and returning the parties to the *status quo ante*. *Ryan v. Brady*, 34 Md.App. 41, 366 A.2d 745 (1976). The usual way in which this is accomplished is through the mutual consent of the parties. *Glen Alden Corp. v. Duvall*, 240 Md. 405, 215 A.2d 155 (1965). It involves a voluntary abrogation of the contract and the return of benefits conferred....
> Rescission of a contract may also be accomplished through an action brought for that purpose. *Ryan v. Brady, supra.*

██ The Chamber's right to recover on the counterclaim, however, is dependent upon whether its breach was material. If the Chamber materially breached the Agreement, Barufaldi was excused from further performance and, accordingly, could not have breached the Agreement when he resigned in January of 2007. Barufaldi maintains that the jury verdict as returned in his favor is decisive on this point. We disagree. The jurors were not instructed on material breach. They were instructed merely that Barufaldi "may recover those damages which naturally arise from the breaking of the contract." Their verdict may not fairly be understood to pass on the issue of materiality.

██ A breach is material when it "is such that further performance of the contract would be 'different in substance from that which was contracted for'." *Dialist, supra,* 42 Md.App. at 178, 399 A.2d 1374 (1979) (quoting *Traylor v. Grafton,* 273 Md. 649, 687, 332 A.2d 651 (1975), in turn quoting *Speed, supra,* 153 Md. at 661, 139 A. 534).[8] Ordinarily, this is a question of fact. *See Speed, supra,* 153 Md. at 661–62, 139 A. 534 (" 'Whether a given breach is material or essential, or not, is a question of fact' " (quoting *Williston on Contracts,* sec. 866)). There are instances, however, when the issue is so clear that it may be decided as a matter of law. *Id.* at 662, 139 A. 534.

We conclude that the evidence adduced at trial in this case was such that no reasonable juror could have found that the

---

**8.** Barufaldi cites *Dialist, supra,* in support of his argument that the Chamber's breach was material. In that case, we affirmed a decision of the circuit court, sitting as the trier of fact, determining that an employer materially breached its contract with one of its salespersons. The salesperson had been promised exclusive sales jurisdiction in Washington, D.C., but in fact, another salesperson also had authority to sell in that territory. We held that the circuit court did not err in concluding that, under these facts, the contract was "different in substance" from what the salesperson had contracted for and justified his cessation of performance.

Unlike in *Dialist,* however, in the instant case, we are not being asked to affirm a finding of materiality, but to hold as a matter of law that the facts permit no other inference but that the breach was material.

Chamber's breach of the incentive pay provisions was immaterial.

The Chamber's argument that its breach was immaterial is premised in large part on the language of the Agreement itself to the effect that increasing net revenues was not to be given priority over Barufaldi's other job responsibilities.[9] It maintains that this language must be read to place incentive compensation on a different footing from Barufaldi's base salary under the Agreement and, thus, render a breach of that provision immaterial.

"The right to receive compensation for services is basic to the employment relationship[.]" 19 *Williston on Contracts, supra,* at § 54:35. The Agreement explicitly provides, under a section entitled "Compensation of Employee," that Barufaldi is entitled to two types of compensation: 1) his annual "base salary of [ ] $52,000[ ]" and 2) "additional compensation" in the form of "incentive-based compensation for each quarter[.]" A detailed formula for calculating the incentive based compensation appears in the Agreement. The language cited by the Chamber was designed to ensure that Barufaldi could not achieve net revenue increases to inflate his incentive compensation at the expense of the long term financial stability of the Chamber. This language cannot, however, be read to diminish the importance of Barufaldi's entitlement to properly earned incentive based compensation. Rather, the plain language of the Agreement suggests that Barufaldi's base salary and his incentive based compensation were equal components of a two-tiered compensation scheme.

The Chamber also points to evidence adduced at trial that Barufaldi was, at one point, willing to accept just $18,000 in satisfaction of the incentive pay provision for the first year of his employment[10] and later, "requested a substitute contract."

---

9. The Chamber does not contend, however, that Barufaldi failed to fulfill his duties under the Agreement or otherwise violated this provision of the Agreement.

10. Barufaldi emailed Panco in September of 2006, shortly after she became Board president, and suggested the $18,000 figure. He testi-

As discussed, *supra,* the new contract proposed by the Chamber was for a slightly higher base salary, but did not contain an incentive pay provision. Chamber witnesses testified that Barufaldi agreed to accept this contract, although he admittedly never executed it prior to his resignation. According to the Chamber, this evidence, if accepted by the jury, would support its position that the incentive pay provision was "secondary to the main purpose of the contract" and that Barufaldi also treated it as such.

We disagree that this evidence supports the Chamber's position. There was no evidence adduced at trial that Barufaldi ever disclaimed his right to incentive pay. Evidence that he may have been willing to accept less incentive compensation than he later claimed has no bearing on whether his entitlement to this compensation was central to his employment contract.[11] Similarly, even if the jurors were to believe that Barufaldi requested the new contract and orally agreed to its terms, we cannot see how this evidence supports a finding that the incentive compensation provision of the Agreement was subordinate to the main purpose of the contract. Rather, this conduct on Barufaldi's part reasonably could support an inference that his frustration over the stalemate respecting incentive compensation led him to contract for a higher fixed salary in exchange for the elimination of the incentive compensation scheme.

The uncontroverted evidence at trial was that Barufaldi never was paid any incentive compensation. The jury found that Barufaldi had earned $60,000 in incentive compensation. The plain language of the Agreement coupled with the undisputed facts makes clear as a matter of law that the Chamber's

---

fied that he did so because "it was clear to [him] that [the Board wasn't] moving on establishing a base line or honoring the [A]greement."

11. Barufaldi undoubtedly had difficulty calculating the amount due and owing under the Agreement as the parties never had cooperated to set a base line net revenue figure. This figure was the starting point for incentive pay calculations.

breach transformed the Agreement into something "different in substance from that which was contracted for." *Dialist, supra,* 42 Md.App. at 178, 399 A.2d 1374. As such, Barufaldi could not be liable for breach based on his subsequent termination of the contract.

To summarize, the court erred in granting Barufaldi's motion for judgment on the Chamber's counterclaim for want of evidence of damages. The erroneous ruling did not prejudice the Chamber, however, because, based on the evidence adduced at trial, the jury could not reasonably have found that the Chamber's breach of the Agreement was not material. Because the Chamber committed a material breach of the Agreement, Barufaldi was excused from performance and therefore could not be liable for breaching the Agreement by terminating his employment before completion of the three-year term. The materiality of the Chamber's breach was not relevant to the issue of Barufaldi's claim for damages flowing from that breach, however. Thus, the trial court did not err in declining to give the Chamber's proposed jury instruction to that effect. Accordingly, we shall affirm the judgment in favor of Barufaldi on the Chamber's counterclaim and affirm the judgment in favor of Barufaldi for breach of contract.[12]

## III.

### Instruction on Novation and Rescission

The Chamber next contends the trial court erred by failing to instruct the jury on the issues of novation and rescission. This argument is premised on the Chamber's assertion that Barufaldi orally accepted the terms of the new contract offered to him at the October 31, 2006 Board meeting and rescinded the prior Agreement. We need not reach the substance of this issue, however, because this claim of error is waived. The Chamber did not request an instruction on

---

12. As we shall discuss, *infra,* we find no merit in the Chamber's remaining challenges.

novation or rescission in its proposed jury instructions, nor did it object to the court's instructions on this basis. *See* Rule 2–520(c). Accordingly, we decline to consider this argument on appeal.

## IV.

### Bona Fide Dispute

The Chamber asserts that the trial court erred by denying its motion for judgment on the WPCL claim because "Barufaldi's own evidence showed unequivocally a bona fide dispute existed not only to entitlement of any incentive pay, but as to the amount as well." Barufaldi counters that the resolution of the bona fide dispute question "turned on the jury's credibility findings."

We begin with the pertinent law. The WPCL governs the manner in which employers pay their employees and provides remedies for an employer's failure to pay an employee all wages owed to him. As relevant to the instant case, the statute provides, in a subtitle entitled "Payment of wage," that an employer shall pay its employees "at least once in every two weeks or twice in each month." LE § 3–502(a)(1)(ii). "Wage" is defined as "all compensation that is due to an employee for employment" and includes bonuses, commissions, fringe benefits, and "any other remuneration promised for service." *Id.* at § 3–501(c).

An employee may bring suit to recover unpaid wages "after 2 weeks have elapsed from the date on which the employer is required to have paid the wages." *Id.* at § 3–507.1(a). As noted above, in such an action, if the court finds that the employer "withheld the wage of an employee in violation of this subtitle *and not as a result of a bona fide dispute,* the court may award the employee an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs." *Id.* at § 3–507.1(b) (emphasis added). Thus, a finding that an employer *did* withhold wages as the result of a "bona fide dispute" as to whether the wages were owed precludes an

award of treble damages, attorneys' fees, and costs under the WPCL.

The parties agree on appeal that any incentive pay earned by Barufaldi qualified as a "wage" under the WPCL. The Chamber contends, however, that the evidence at trial was such that no reasonable jury could have found there was *not* a bona fide dispute as to Barufaldi's entitlement to these wages. This is so, the Chamber argues, because the evidence showed that the parties never agreed on a "base line net revenue figure" and that they disagreed about the meaning of the phrase "net revenue" as used in the Agreement.

■ As discussed, *supra*, at the close of Barufaldi's case, the Chamber moved for judgment in its favor on the WPCL count arguing that Barufaldi had failed to prove the absence of a bona fide dispute. The Chamber pressed the same argument in its post-trial motions. To the extent the Chamber continues to argue that the existence of a bona fide dispute precludes *any recovery* under the WPCL, this is an incorrect statement of the law. In a suit under the WPCL, the existence of a bona fide dispute regarding the entitlement to or the amount of wages due and owing is relevant only to whether the plaintiff may recover treble damages, attorneys' fees, and costs. It is not relevant to whether the plaintiff may recover unpaid wages.

In the instant case, the jurors made the following relevant findings by special verdict: 1) the Chamber breached the Agreement and owed Barufaldi $60,000 in unpaid incentive pay; 2) the Chamber violated the WPCL; 3) "the failure to pay wages" was not as a result of a bona fide dispute; and 4) Barufaldi was not entitled to any additional damages under the WPCL above the $60,000 in contract damages already awarded. (The parties had stipulated that the contract damages and the WPCL damages were identical.) Thus, the jurors made a primary award of $60,000 in unpaid wages under Barufaldi's contract count and the WPCL, but declined to award treble damages under the WPCL.

The issue of Barufaldi's entitlement *vel non* to attorneys' fees and costs was for the court to decide and is the subject of

Barufaldi's appeal. Therefore, even though the jury declined to award treble damages under the WPCL, we still must determine whether the issue of a bona fide dispute should have been resolved in the Chamber's favor as a matter of law.

The Court of Appeals has explained that a "bona fide dispute" exists when an employer has "a good faith basis" for withholding wages or when "there is a legitimate dispute over the validity of the claim [for unpaid wages] or the amount that is owing." *Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533, 543, 745 A.2d 1026 (2000). Thus, the appropriate inquiry is whether there was "sufficient evidence adduced to permit a trier of fact to determine that [the employer] did not act in good faith when it refused to pay" wages to an employee. *Id.*

In the instant case, the Chamber argued that Barufaldi was not entitled to collect any incentive-based compensation because he did not increase the Chamber's net revenues, as it defined that term. It points to the testimony of its accounting witness that "net revenue" has a definite meaning in that field that is inconsistent with any compensation being owed to Barufaldi; that Barufaldi's accounting witness acknowledged the existence of a "dispute" over the meaning of the term "net revenue" in the Agreement; and that witness at one point seemed to suggest that Barufaldi only was entitled to $1,950 in total incentive pay.

There was evidence adduced, however, that the definition of "net revenue" used by the Chamber, while perhaps definite in the accounting field, was not the meaning contemplated by the parties, who did not bring technical expertise to the bargaining table. Barufaldi argued, instead, that the parties intended the term to mean "net profit" or "net income" and that the Chamber's trial theory was a *"post hoc* rationalization" for its failure to pay him as promised. There was further evidence that, in the first ten months after Barufaldi was hired, the then Board president refused to work with him to set a "base line net revenue figure" as the Agreement required; that the Board contemplated firing Barufaldi if he did not accept the new contract offered to him in October of 2006; that Panco

viewed the Agreement as being advantageous to Barufaldi [13]; and that Barufaldi was entitled to receive more than $100,000 in incentive pay by application of the formula provided under the Agreement.

The jury was free to accept or reject any or all of this evidence in determining whether the Chamber acted in good faith when it failed to pay Barufaldi any incentive-based compensation during his fourteen month tenure. There was ample evidence which, if credited by the jury, supported Barufaldi's argument that the Chamber acted in bad faith in refusing to pay incentive-based compensation because of personal conflicts and dissatisfaction with the realities of the deal it had struck with him. We perceive no error in the denial of the motion for judgment and the JNOV motion on this issue. [14]

## V.

### Unredacted Exhibit

The last issue raised by the Chamber on cross-appeal is that it was deprived of a fair trial because an exhibit ordered to be redacted by the trial court was given to the jury in its unredacted form. The exhibit in question was a copy of Barufaldi's resignation letter, which read as follows:

---

13. Shortly before Barufaldi resigned, Panco wrote in an email to Hitchcock, the outgoing Board president, that Barufaldi was "still under that lovely contract you negotiated, [ ] so grin and bear it." The suggestion in this email that the Agreement worked to Barufaldi's benefit was contrary to much of the testimony from Board witnesses suggesting that Barufaldi was entitled to no more than his base salary under the Agreement.

14. The Chamber also argues that the opinion offered by Barufaldi's accounting witness on the meaning of the term "net revenue" in the Agreement was improper because the Agreement was unambiguous. It did not challenge the expert's qualifications at trial, however, or argue that he should not be permitted to offer an opinion on this subject. Both parties offered expert testimony on the meaning of the term "net revenue." The jury properly was instructed that it should give contract terms having a special meaning in trade or custom that meaning *if* it determined that the parties to the contract knew that meaning and intended that meaning. This properly was a question of fact for the jury to decide.

Attention:

The President and the Board of Directors of [the Chamber] are being informed that as of today, January 23, 2007, I, Daniel J. Barufaldi, find it impossible to continue as Executive Director.

This decision was preceded and precipitated by the actions of the Executive Committee and the full Board's condoning of flagrant and continued breaches of [the Agreement], bad faith actions and unfair dealings, *and interminable character attacks with malice directed at my wife and me and numerous other actions and disrespectful treatment intended to defame and discredit. As a result an extremely hostile employment environment was created by persons on this Board that would be deemed unacceptable by any professional of my qualifications and credentials.*

Finally, you are notified that all future communication and correspondence will be conducted through legal representation. Identification of such representation will be forthcoming.

(Emphasis added.)

Barufaldi was questioned about his letter of resignation on direct examination. After he identified the letter and summarized the first paragraph, counsel for the Chamber asked to approach. Counsel for the Chamber argued at the bench that the second paragraph of the letter contained accusations that were not relevant to Barufaldi's causes of action and were prejudicial to the Chamber. The trial judge responded: "All right. Well, I would suggest that we excise out part of that second paragraph. Any objection to that coming in then?"

Counsel for Barufaldi argued that the second paragraph was relevant to his negligent misrepresentation claim and whether there was a bona fide dispute under the WPCL. The trial court responded:

But how does ["]interminable character attacks with malice directed at my wife,["] how does that impact anything whatsoever?

\* \* \*

[A]nd then it goes on and says, and numerous other actions and disrespectful treatment intended to defame and discredit.

So, there are portions of it that I find that aren't relevant to the causes that you pled. So what we'll have to do, between now and when you offer it, is, don't ask him to read this—what was your intention to ask him next?

After some discussion, it was agreed that Barufaldi's lawyer would ask him what he meant by "flagrant and continuing breaches" of the Agreement and by "bad faith actions and unfair dealings," but would not otherwise read from the letter or question Barufaldi about the other accusations in paragraph two. The letter, which had been marked for identification as Plaintiff's Exhibit 17, was not introduced into evidence at that time.

The following day, at the close of Barufaldi's case, he offered all of his marked and identified exhibits into evidence and they were admitted without objection. No further mention of the redaction of the letter appeared in the record of the trial.

According to the Chamber, counsel for the parties discussed redactions to the letter in off-the-record conversations and agreed that Barufaldi's lawyer would make the necessary changes. No redactions ever were made, however, and the letter was accepted into evidence in its unredacted form.[15] The Chamber argues that "[t]here can be no doubt it affected the eventual outcome of the case." Barufaldi agrees that the parties discussed redactions to the letter, but states that it never was decided who would make the redactions.

We conclude that the introduction into evidence of the unredacted resignation letter does not warrant a new trial.

---

**15.** In its brief, the Chamber suggests that Barufaldi's lawyer may have violated Rule 3.3(a)(1) of the Maryland Rules of Professional Conduct by "knowingly submitting an improper trial exhibit." Barufaldi asks us to strike that argument because it contains "scurrilous and scandalous matter." In its reply brief, the Chamber withdraws any argument that Barufaldi's lawyer acted with nefarious intent. We decline to strike this portion of the Chamber's brief.

First, despite the Chamber's characterizations of the trial court's ruling, a review of the transcript reveals that, aside from expressing some reservations about the relevance of portions of the second paragraph, the trial court never explicitly directed counsel for Barufaldi to redact portions of the second paragraph. The court suggested redaction as a solution, but observed that it would be difficult to determine the relevance of portions of the letter until after Barufaldi had finished testifying. As the objecting party, it was the Chamber's obligation to follow up with the court or with opposing counsel to determine what redactions, if any, had been made before the letter was introduced into evidence the following day and to preserve any objections to the content. It failed to do so and, accordingly, this claim of error has been waived.

Even if we were to conclude that the court ordered portions of paragraph two redacted and therefore this issue was preserved for review, we nonetheless would conclude that any error was not prejudicial. The objected to portions of the second paragraph concern character attacks upon Barufaldi's wife and other "disrespectful treatment" of Barufaldi. It became clear during the Chamber's case that several Board members believed that Barufaldi's wife was spending too much time in the Chamber offices and was using Barufaldi's computer during work hours. It also was abundantly clear that Barufaldi had a contentious relationship with numerous members of the Board and Chamber staff. The generalized accusations of maltreatment appearing in the resignation letter were cumulative of evidence introduced at trial without objection and would not have come as any surprise to the jurors.

## APPEAL

### I.

### Attorneys' Fees

We now turn to the only issue raised by Barufaldi on appeal: whether the trial court erred in denying his motion

for attorneys' fees and costs. As discussed, *supra,* Barufaldi prevailed on his WPCL claim and the jury found in his favor on the related question whether the Chamber withheld incentive compensation on the basis of a bona fide dispute. The latter finding triggered a potential award of reasonable attorneys' fees under the statute.

On April 30, 2009, Barufaldi filed his motion, seeking $160,275.97 in fees and costs. Attached to his motion were billing records and affidavits from counsel and support staff. The Chamber opposed the motion, arguing that the jury's decision not to award treble damages effectively nullified its finding that wages were withheld in the absence of a bona fide dispute, and therefore Barufaldi was not entitled to recover any attorneys' fees. The Chamber also argued that the fees requested were unreasonable for a variety of reasons.

On May 26, 2009, the circuit court entered an order denying the motion for fees. The Order stated in its entirety:

> UPON CONSIDERATION of [the Chamber]'s Opposition to [Barufaldi]'s Motion for Award of Statutory Attorney's Fees and Costs ("Motion"), and good cause having been shown, it is this 26th day of May, 2009 hereby
>
> ORDERED that Plaintiff's motion is DENIED, and it is further
>
> ORDERED that Plaintiff is not entitled to an award of attorney's fees or costs.

Barufaldi timely appealed this order.

The WPCL is a fee-shifting statute. *See Friolo v. Frankel,* 403 Md. 443, 456–57, 942 A.2d 1242 (2008) (*"Friolo II "*). It provides, in pertinent part, that if "a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the court may award ... reasonable counsel fees and other costs." LE § 3–507.1. The Court of Appeals has explained that the discretion to award fees under the WPCL should be exercised liberally, opining:

> An action under the Wage and Hour Law is to recover the minimum amounts set by law, and the provision for counsel

fees is an important element in ensuring that the law is obeyed. In strengthening the Payment Law in 1993, the Legislature considered the arguments pro and con and struck the balance of allowing a reasonable counsel fee under § 3–507.1 only in those situations where the employer acted wilfully—in the absence of a bona fide dispute. When such a finding is made in an action under that law or when recovery is allowed under the Wage and Hour Law, **courts should exercise their discretion liberally in favor of awarding a reasonable fee, unless the circumstances of the particular case indicate some good reason why a fee award is inappropriate in that case.** *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40, 48 (1983) (holding that under 42 U.S.C. § 1988, which allows the award of attorneys' fees in a civil rights action under § 1983, "a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust,' " quoting S.Rep. No. 94–1011, p. 4 (1976), 1976 U.S.C.C.A.N. 5908, p. 5912).

*Friolo v. Frankel*, 373 Md. 501, 518, 819 A.2d 354 (2003) (*"Friolo I "*) (emphasis supplied).

 In a decision issued after the ruling on attorneys' fees in this case, the Court of Appeals clarified that, while the decision to award fees in a WPCL case is reserved to the court, the predicate for such an award—the absence of a bona fide dispute—is a jury question and may not be second guessed by the court in determining the entitlement to fees.[16] *Programmers' Consortium, Inc. v. Clark*, 409 Md. 548, 564, 976 A.2d 290 (2009). In other words, when, as in *Programmers' Consortium*, a jury determines that wages were with-

---

**16.** This Court had held that since the award of treble damages was reserved to the jury and the award of fees was reserved to the court, it was permissible for the court to find the predicate condition of the absence of a bona fide dispute in the exercise of its discretion to award fees despite a contrary finding by the jury. *Programmers' Consortium, Inc. v. Karl*, 180 Md.App. 506, 951 A.2d 914 (2008), *rev'd in part,* 409 Md. 548, 976 A.2d 290 (2009). The Court of Appeals reversed this aspect of our holding.

held *as a result of a bona fide dispute,* the court is without authority to award fees under the WPCL. On the other hand, when, as in the instant case, the jury determines that wages were withheld *not* as the result of a bona fide dispute, a court may choose not to award fees for many reasons, but not on the basis that the wages in fact were withheld as a result of a bona fide dispute. *Id.* at 561, 976 A.2d 290.[17]

Failure to exercise discretion is itself an abuse of discretion. *See, e.g., Thompson v. State,* 167 Md.App. 513, 526, 893 A.2d 1169 (2006). In the instant case, we cannot tell whether the court exercised discretion in making its ruling or, if it did, how it did. The court denied the fee request outright without any explanation of its reasoning beyond a reference to relying on the Chamber's opposition. Given that the jury made the predicate finding of willfulness on the part of the Chamber, and given the remedial purposes of the WPCL, it was incumbent upon the trial court to set forth particular circumstances militating against any award of fees in this case. *See Friolo II, supra,* 403 Md. at 454–55, 942 A.2d 1242 (noting the importance of the trial court explaining how it reaches its fee determination). For this reason, we must vacate the order denying Barufaldi's motion for attorneys' fees and remand for further proceedings on this issue.

**JUDGMENTS AFFIRMED. ORDER DENYING MO-TION FOR ATTORNEYS' FEES VACATED AND MO-TION FOR ATTORNEYS' FEES REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR**

---

17. On appeal, as below, the Chamber's primary argument for the denial of any attorneys' fees is that the jury "nullified" the WPCL count by declining to award treble damages. As Barufaldi asserts, however, the jury properly could find the absence of a bona fide dispute *and* decline to award additional statutory damages. *See Programmers' Consortium, supra,* 180 Md.App. at 526, 951 A.2d 914 (jury empowered to decide whether wages withheld as a result of a bona fide dispute, whether, in its discretion, to award exemplary damages, and, if so, in what amount up to treble the withheld wages). Accordingly, there is no merit in the argument that, because the jury decided not to award treble damages, the circuit court could ignore the jury's finding on the bona fide dispute.

FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPEL-LEE.